## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00685-SCT

*BOBBY RAY DELOACH*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/27/97 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANTHONY J. BUCKLEY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | JEANNENE T. PACIFIC |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/08/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/29/98 |

**BEFORE PRATHER, C.J., ROBERTS AND MILLS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. On July 10, 1995, the Grand Jury of the Second Judicial District of Jones County, Mississippi, indicted Bobby Ray DeLoach (hereinafter "DeLoach") for the crime of possession of cocaine pursuant to Miss. Code Ann. § 41-29-139. After presentation of preliminary discovery and preliminary motions from the defense and prosecution, the DeLoach trial commenced with a jury on May 27, 1997 with the Honorable Billy Joe Landrum presiding. The trial concluded the same day with a guilty verdict of possession of cocaine being returned. The lower court sentenced DeLoach to three (3) years with the M.D.O.C. with one (1) year suspended and two (2) to serve. DeLoach was also sentenced to pay a fine of $10,000.00 with $5,000.00 suspended. DeLoach timely filed his Motion for a New Trial which was denied by the trial court. It is from the foregoing events that DeLoach brings this timely appeal asserting the following issues:

### I. WHETHER THE TRIAL COURT ERRED IN OVERRULING, WITHOUT

**ARTICULATION, THE DEFENDANT'S MOTION TO DISMISS ON GROUNDS OF A VIOLATION OF THE DEFENDANT'S SIXTH AMENDMENT SPEEDY TRIAL RIGHTS AND WITHOUT EVEN REQUIRING THE STATE TO RESPOND?**

**II. WHETHER A UNIFORMED PRIVATE SECURITY GUARD, EMPLOYED AND ACTING UNDER AUTHORITY OF A PUBLIC HOUSING AUTHORITY, SHOULD BE REQUIRED TO MIRANDIZE AN INDIVIDUAL UPON PROBABLE CAUSE THAT A CRIME IS BEING COMMITTED?**

**III. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE TO ASK THE DEFENDANT, OVER DEFENSE OBJECTION, IF HE HAD EVER BEEN CONVICTED OF A PRIOR FELONY AND IN NOT CONDUCTING A WEIGHING TEST?**

## STATEMENT OF THE FACTS

¶2. DeLoach was arrested at the Laurel Housing Authority property for possession of cocaine on February 6, 1995. He filed a motion for a speedy trial on September 18, 1996, while he was incarcerated at Parchman on a burglary charge. DeLoach was released from Parchman on February 17, 1997. He was arraigned a week after his release from Parchman for the crime of possession of cocaine and then tried on May 27, 1997. There is record evidence that DeLoach's court appointed attorney accepted a trial date as well as refused earlier trial dates because of scheduling conflicts with other cases he was trying. He presented a speedy trial motion prior to trial which the trial court denied prior to the State providing reasons for the delay. Neither DeLoach nor his attorney stated any prejudice to DeLoach as a result of the delay in trying him or that the state had attempted to gain any tactical advantage over him by delaying the case for trial.

¶3. After opening statements from the State, Patrick Paige, a private security officer assigned to patrol the Laurel Housing Authority was called to testify. He testified to receiving a call concerning a speeding vehicle on the road near the Housing Authority property. When he went to investigate, he saw a car parked on Housing Authority property on Park Street. After the people got out of the car, Paige recognized DeLoach who was a passenger of the car. Paige knew that DeLoach was not allowed on the property as a result of a ban that had occurred a few months prior to this incident.

¶4. Paige further testified that he told DeLoach that he was not supposed to be on Laurel Housing property. He patted DeLoach down and asked him whether he had anything else on him. DeLoach responded that he did have some drugs on him and proceeded to take some drugs out of his shoe. A Laurel police officer was called on the dispatcher. After the alleged drugs had been placed on the top of the car, Officer Kevin Jackson with the Laurel Police Department took DeLoach into custody.

¶5. The second State's witness was John L. Smith, also employed as security for the Laurel Housing Authority. He testified that DeLoach was banned from the Laurel Housing Authority on December 19, 1994. This notice was hand delivered to him by Smith. He also testified that he was working on the night in question with Paige. He testified about getting a call about a car speeding and upon investigating found a car parked at 630 Park Street which was on Housing Authority property. He stated that Paige told DeLoach that he was not supposed to be on housing property. After patting him down, Paige asked him if he had anything on him. Smith testified that it was at this time that he

saw DeLoach reach in his shoe and pull out some cocaine. The Laurel police were called and DeLoach was given his *Miranda* rights and placed in a police car. On cross-examination, Smith denied that Paige had asked DeLoach for drugs when DeLoach handed him the cocaine. He also testified that the guard on the housing authority property had the power to detain people for trespassing until the Laurel police arrive.

¶6. The next State's witness was Officer Earl Reed of the Laurel Police Department. His testimony was of his response to the call to assist the security officers. He also testified that Paige had placed DeLoach under arrest for trespass, and that Paige located the drugs on DeLoach. He further testified that Officer Kevin Jackson arrived on the scene and took possession of the cocaine. Reed testified that he transported DeLoach to the Laurel Police Department.

¶7. Kevin Jackson was the fourth witness on behalf of the State. He testified as to his field test and to the positive results of the substances found in possession of DeLoach. He also testified that he was the officer that actually placed DeLoach under arrest and read DeLoach his *Miranda* rights.

¶8. The State's fifth and final witness was Patricia Barnes of the State Crime Laboratory in Jackson, Mississippi. Her testimony was expert testimony in her capacity as a forensic scientist specializing in drug analysis. She testified as to her conclusions in testing the substance found on DeLoach. She determined that the sample contained cocaine. Upon conclusion of Barnes' testimony, the State rested.

¶9. After the defense 's Motion for a Directed Verdict, which was overruled, the defense called DeLoach to testify on his own behalf. DeLoach testified that he went to the Laurel Housing Authority to visit a friend, and that he was never notified that he was banned from the area. He testified that Paige approached the vehicle and he got out of the vehicle to greet him. He also said that Paige told him if he had any drugs on his person, he needed to give them to Paige because drug dogs were coming to the scene. He was searched for weapons and detained until the police came. He claimed the cocaine was for his personal use and that he was a drug addict at the time of the incident.

¶10. On cross examination, DeLoach admitted that he used cocaine on the night in question and that he gave what he had left to security officer Paige. He admitted that he was not employed and that the cocaine he possessed was "found" rather than purchased. He also admitted to buying cocaine in the past and to having previously been convicted of a felony. After DeLoach's testimony, the defense rested.

¶11. After the usual deliberation as to the appropriateness of certain jury instructions, closing arguments were delivered to the jury. The jury returned a verdict of guilty of possession of cocaine.

### DISCUSSION OF THE ISSUES

### I. WHETHER THE TRIAL COURT ERRED IN OVERRULING, WITHOUT ARTICULATION, THE DEFENDANT'S MOTION TO DISMISS ON GROUNDS OF A VIOLATION OF THE DEFENDANT'S SIXTH AMENDMENT SPEEDY TRIAL RIGHTS AND WITHOUT EVEN REQUIRING THE STATE TO RESPOND?

¶12. DeLoach argues that his speedy trial rights were violated because the State did not try him until

some two years after his arrest. He further argues that the trial court erred by not requiring the State to give "good cause" for the delay and by its failure to articulate a reason for the denial of the motion. Review of a speedy trial claim encompasses the fact question of whether the trial delay rose from good cause. Under this Court's standard of review, this Court will uphold a decision based on substantial, credible evidence. *Folk v. State*, 576 So.2d 1243, 1247 (Miss. 1991). If no probative evidence supports the trial court's finding of good cause, this Court will ordinarily reverse. *Folk v. State*, 576 So.2d at 1247. The state bears the burden of proving good cause for a speedy trial delay, and thus bears the risk of non-persuasion. *Flores v. State*, 574 So.2d 1314, 1318 (Miss. 1990).

¶13. The facts pertinent for consideration of DeLoach's allegation of constitutional violation of his right to a speedy trial are necessarily recited.

CHRONOLOGY OF EVENTS

DATE AND CORRESPONDING EVENTS

2/6/95 DeLoach arrested.

7/17/95 DeLoach indicted.

9/18/96 DeLoach filed speedy trial motion while in the Mississippi State Penitentiary on a burglary charge.

2/17/97 DeLoach released from prison concerning the burglary charge.

2/24/97 DeLoach arraigned and trial date set for 3/25/97.

3/6/97 DeLoach's motion to dismiss and motion for continuance filed.

3/24/97 DeLoach's motion for continuance and additional time within which to enter into plea negotiations filed.

3/28/97 Order continuing case entered and motion to dismiss overruled.

5/9/97 Motion for court to reconsider filed.

5/19/97 Order overruling Motion to reconsider entered.

5/25/97 Trial began. (838 days since arrest; 91 days since arraignment)

¶14. The right to a speedy trial attaches at the time of the accused's arrest, indictment, or information. *Smith v. State*, 550 So.2d 406, 408 (Miss. 1989). If the Court finds a constitutional speedy trial violation, the sole remedy is to reverse the trial court's decision and dismiss the charges. DeLoach's constitutional right to a speedy trial is considered under the factors established by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972). The balancing test of *Barker* are as follows: (1) length of delay; (2) reason for the delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether defendant was prejudiced by the delay. *Noe v. State*, 616 So.2d 298, 300 (Miss. 1993). In considering this issue, it is important to note what this Court pronounced

in *State v. Magnusen*, 646 So.2d 1275, 1278 (Miss. 1994):

> This Court recognized in *Beavers v. State*:
>
> No mathematical formula exists according to which the *Barker* weighing and balancing process must be performed. The weight to be given each factor necessarily turns on the quality of evidence available on each and, in the absence of evidence, identification of the party with the risk of nonpersuasion. In the end, no one factor is dispositive. The totality of the circumstances must be considered.
>
> 498 So.2d at 790.

¶15. In the instant case, the trial court did not require the State to respond and did not articulate its findings and views regarding the *Barker* factors when it denied DeLoach's motion to dismiss. In similar cases, this Court has acted de novo in performing the *Barker* analysis. Furthermore, this Court has noted that it would be extremely helpful if the Circuit Courts, in considering these matters, would provide an articulated statement of their findings of evidentiary fact and the reasons for the decision to grant or deny the motion to dismiss. *State v. Ferguson*, 576 So.2d 1252, 1255 (Miss. 1991). *See also* *Folk v. State*, 576 So.2d 1243, 1247 (Miss. 1991); and *Gavin v. State*, 473 So.2d 952, 955 (Miss. 1985). Under the circumstances, the writer will proceed with a de novo standard of review.

## LENGTH OF DELAY

¶16. For consideration of the *Barker* factors, the relevant time begins to run from the date of arrest. From DeLoach's arrest until trial, 838 days elapsed. This is sufficient to trigger the *Barker* balancing test and require an examination of the other factors. Under Mississippi law, a delay of eight months is presumptively prejudicial. *Smith v. State*, 550 So.2d 406, 408 (Miss. 1989). However, "[t]his factor alone, is insufficient for reversal, but requires a close examination of the remaining factors." *Handley v. State*, 574 So.2d 671, 676 (Miss. 1990). This factor favors DeLoach, necessitating scrutiny of the remaining *Barker* factors.

## REASON FOR DELAY

¶17. Once there is a finding that the delay is presumptively prejudicial, the burden shifts to the prosecution to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons. *Wiley v. State*, 582 So.2d 1008, 1012 (Miss. 1991). In the case at bar, the prosecution provided no excuse for the delay. "Where the defendant has not caused the delay, and where the prosecution has declined to show good cause for the delay, we must weigh this factor against the prosecution. It is the burden of the state to see that a defendant receives a speedy trial." *Smith v. State*, 550 So.2d 406, 409 (Miss. 1989) (*quoting* *Perry v. State*, 419 So.2d 194, 199 (Miss. 1982)).

¶18. The most critical period of delay is the 748 day prearraignment delay between DeLoach's arrest on February 6, 1995, and his arraignment on February 24, 1997. There is no indication in the record that this delay was intentional on the part of the State. Nor is there a showing by DeLoach that the State gained any tactical advantage from the delay. *Ross v. State*, 605 So.2d 17, 22 (Miss. 1992).

However, it is important to note that DeLoach was incarcerated during this time period on a burglary charge and was arraigned 7 days after he was released from prison. This portion of the delay is weighed against the State, but not as heavily.

¶19. However, the 91 day period of delay between the arraingment and the trial on May 25, 1997, is almost wholly attributed to the defendant who requested two continuances and additional time in which to enter into plea negotiations. A delay attributable to the defendant tolls the constitutional speedy trial clock. *Ross v. State*, 605 So.2d at 22. Thus, continuances requested and then granted to the defendant toll the running of the constitutional speedy trial clock. *State V. Magnusen*, 646 So.2d 1275, 1282 (Miss. 1994). Furthermore, where a defendant is involved in plea negotiations with the state prior to trial, this cannot be counted against the state in a speedy trial analysis. *Winder v. State*, 640 So.2d 893, 894 (Miss. 1994) (*citing* *Reed v. State*, 506 So.2d 277, 281 (Miss. 1987)). It is clear that DeLoach acquiesced in and initiated much of the plea bargaining that caused the resulting delay. "If the defendant is the cause of the delay, he cannot complain thereafter." *Reed v. State*, 506 So.2d at 281. Thus, the length of the delay not attributable to either DeLoach or his lawyer is approximately 80 days.

## ASSERTION OF RIGHT

¶20. In his motion to dismiss, DeLoach charges that on September 18, 1996, he filed with the trial court a written demand for a fast and speedy trial. In *McGhee v. State*, 657 So.2d 799, 804 (Miss. 1995), this Court stated:

> It is not the duty of the accused to bring himself to trial. *Kinzey v. State*, 498 So.2d 814, 823 (Miss. 1986). It is the State, of course, that bears the burden of bringing an accused to trial in a speedy manner. *Magnusen*, at 1283 (*citing* *Vickery v. State*, 535 So.2d 1371, 1377 (Miss. 1988)).

Thus, while DeLoach has some responsibility to assert a speedy trial claim, the primary burden is on the courts and the prosecutors to assure that they bring cases to trial.

¶21. However, in *Simmons v. State*, 678 So.2d 683 (Miss. 1996), this Court noted that the defendant's constitutional right to speedy trial was not violated, although 21- month delay between arrest and trial was presumptively prejudicial, where significant portion of delay was due to defendant's request for psychological evaluation, <u>defendant did not bring motion to dismiss on speedy trial grounds for over a year</u>, and defendant did not demonstrate any prejudice. In the case sub judice, DeLoach failed to file a motion to dismiss until after one year and seven months from the date of his arrest. "Thus, this factor favors the State, but only slightly because the "primary" burden is upon the State." *Simmons*, 678 So.2d at 687.

## PREJUDICE

¶22. DeLoach demonstrated no actual prejudice. The delay was clearly attributed to his incarceration on a burglary charge. There was presumptive prejudice only. In DeLoach's case, he was tried 838 days after his arrest. However, he was serving time for a burglary charge until February 17, 1997, at which time he was released from prison. He was arraigned the next week and was tried 91 days later. "Where a defendant is serving a prison term in the state penitentiary or is imprisoned on totally

unrelated charges, there is no resulting prejudice based solely on continued incarceration." ***Winder v. State***, 640 So.2d 893, 895 (Miss. 1994). This Court has further opined that "[a] defendant's assertion of prejudice attributable solely to incarceration, with no other harm, typically is not sufficient to warrant reversal." ***Ross v. State***, 605 So.2d 17, 23 (Miss. 1992).

¶23. DeLoach does not allege any prejudice to this Court whatsoever. Without a showing of prejudice, DeLoach cannot make out a claim of due process violation. ***Simmons v. State***, 678 So.2d 683, 687 (Miss. 1996). This factor weighs heavily against DeLoach and in favor of the State. Furthermore, there is no argument that DeLoach's defense has been curtailed or impaired because of any delay. This Court has stated that "we will not infer prejudice to the defense out of the 'clear blue.'" ***State v. Magnusen***, 646 So.2d at 1285. Having reviewed all the Barker factors, based on the facts in this case, and considering the totality of the circumstances, we conclude that DeLoach was not denied his constitutional right to a speedy trial. This issue is without merit.

### II. WHETHER A UNIFORMED PRIVATE SECURITY GUARD, EMPLOYED AND ACTING UNDER AUTHORITY OF A PUBLIC HOUSING AUTHORITY, SHOULD BE REQUIRED TO MIRANDIZE AN INDIVIDUAL UPON PROBABLE CAUSE THAT A CRIME IS BEING COMMITTED?

¶24. The issue raised by DeLoach appears to be one of first impression in the State of Mississippi. The issue boils down to the question of whether a security guard working for a private security company employed by public housing authority should be under the same constitutional constraints as a police officer. It is DeLoach's contention that a private security guard should be and thus, ***Miranda*** warnings should have been read to him on the night in question. He asserts that the security officers' failure to do so required the trial court to suppress any statements or evidence seized.

¶25. This issue presents a question of law, for which the standard of review is de novo. ***Rose v. State***, 586 So.2d 746, 751 (Miss. 1991) (*citing* ***Harrison County v. City of Gulfport***, 557 So.2d 780, 784 (Miss. 1990)).

¶26. The Fifth Amendment privilege against self-incrimination which ***Miranda*** warnings are designed to protect has never been held to apply where private security personnel have questioned a defendant without any participation from the government. The purpose of the ***Miranda*** warnings is to protect the individual's constitutional rights against illegal government intrusion. ***Miranda v. Arizona,*** 384 U.S. 436, 444 (1966). In a private investigation though, ***Miranda*** warnings need not be given. However, private conduct may become so pervaded by governmental action as to pierce the shield of private investigation into public constitutional scrutiny. "The Fifth Circuit Court of Appeals stated in ***Roberts v. Louisiana Downs, Inc.***, 742 F.2d 221 (1984), that there is state action where there is a close connection between the state and the conduct of the actor. A determination is made by weighing the circumstances to see if there is a sufficient nexus. ***Id.*** at 224." ***Bankston v. Pass Rd. Tire Ctr., Inc.***, 611 So.2d 998, 1008 (Miss. 1992). Thus, for private conduct to be turned into state action, there must be a clear nexus between the state or law enforcement and a private investigation.

¶27. DeLoach asserts that because the property is owned by the Laurel Housing Authority it is actually city owned property. He further asserts that the City of Laurel, which is a sovereign power, through the Laurel Housing Authority, is using public funds to hire private security guards to carry out police duties and as such, are clothed with law enforcement powers. Thus, DeLoach is

maintaining that because police powers are traditionally exclusively reserved to the states, these security guards were state actors. However, this Court finds that there is wanting evidence of public involvement in the private investigation and detainment of DeLoach.

¶28. The mere fact that the security guards performed their duties on public or city property, or for the public's benefit, does not make them state actors necessitating Miranda warnings being given to DeLoach. *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982). *Gallagher v. "Neil Young Freedom Concert"*, 49 F.3d 1442, 1457 (10th Cir. 1995) (finding that providing security at building leased from government was not exclusive state function). Furthermore, the Supreme Court has stated that the fact that a private entity contracts with the government or receives governmental funds or other kinds of governmental assistance does not automatically transform the conduct of that entity into state action. *Rendell-Baker v. Kohn*, 457 U.S. at 842-43 (1982); *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 544 (1987) ("[t]he Government may subsidize private entities without assuming constitutional responsibility for their actions."). Additionally, the private surveillance, apprehension and questioning of DeLoach was in no way instigated by a police officer or undertaken upon the official instruction of a law enforcement agency.

¶29. Accordingly, because the facts of the instant case do not establish a sufficiently close nexus between the Laurel Housing Authority and the actions taken by the private security guards, there is no showing of state action. Therefore, these private security guards were no more subject to the restrictions dictated by the Fifth Amendment and Miranda requirements than any other private individual. These security guards, operating in a private capacity, are completely distinguishable for Fifth Amendment purposes from those who have an obvious nexus to governmental police enforcement or are otherwise obviously working with the police or an agency of the state.

¶30. Thus, the private security guards were not required to give *Miranda* warnings to DeLoach and the trial court properly admitted the contraband found at the time of the incident. This issue is without merit.

### III. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE TO ASK THE DEFENDANT, OVER DEFENSE OBJECTION, IF HE HAD EVER BEEN CONVICTED OF A PRIOR FELONY AND IN NOT CONDUCTING A WEIGHING TEST?

¶31. DeLoach argues that the Court erred in allowing the State to impeach him on cross-examination, with evidence of a prior conviction, without first conducting an on-the-record determination that the probative value outweighed the prejudicial effect of such evidence. Therefore, Rule 609 controls. M.R.E. 609(a) provides:

> General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party or (2) involved dishonesty or false statement, regardless of the punishment.

The trial court found DeLoach's conviction of a felony admissible pursuant to M.R.E. 609(a)(1),

therefore, this Court must determine whether the trial court abused its discretion in granting admissibility of a prior conviction for impeachment purposes under M.R.E. 609(a)(1). *McGee v. State*, 569 So.2d 1191, 1195 (Miss. 1990) (*citing Johnson v. State*, 525 So.2d 809, 812 (Miss. 1988)). Where admission of evidence of a prior conviction is manifestly prejudicial, this Court will reverse and remand or remand for a finding pursuant to M.R.E. 609(a)(1) if none has been made. *Jordan v. State*, 592 So.2d 522, 523 (Miss. 1991).

¶32. In *Peterson v. State*, 518 So.2d 632 (Miss. 1987), the defendant argued that the trial court erred in allowing the prosecution to impeach his testimony with a prior felony conviction without first making an on-the-record determination that its probative value outweighed its prejudicial effect. On appeal, the Court held that M.R.E. 609(a)(1) requires the trial court to make an on-the-record determination that the probative value of the prior conviction outweighs its prejudicial effect before admitting any evidence of a prior conviction. *Peterson*, 518 So.2d at 636. The Court listed several factors that should be considered by the trial court when weighing the probative value against the prejudicial effect:

> (1) The impeachment value of the prior crime.
>
> (2) The point in time of the conviction and the witness' subsequent history.
>
> (3) The similarity between the past crime and the charged crime.
>
> (4) The importance of the defendant's testimony.
>
> (5) The centrality of the credibility issue.

*Id.* at 636. However, the State first has a threshold burden of establishing prima facie that the prior conviction has probative value. *Johnson*, 604 So.2d at 310.

¶33. In the case sub judice, the holding of *Peterson* was clearly not met. That is, the trial judge failed to utilize the *Peterson* factors in determining the admissibility of DeLoach's prior conviction. The only statement made by the judge concerning this matter was, "[i]f they know that he has been convicted of a felony, then they have a right to use it for impeachment purposes if they feel like he has given perjured testimony." There was no finding on the record that the probative value outweighed the prejudicial effect of allowing the prior conviction into evidence. *Hickson v. State*, 697 So.2d 391, 396 (Miss. 1997).

¶34. This Court finds that the admission of DeLoach's previous conviction into evidence without a determination on the record under Rule 609(a)(1), that the probative value of the evidence outweighed its prejudicial effect, was erroneous. However, the contested testimony constitutes harmless error in the instant case because of the overwhelming evidence of guilt. This Court has held that the basic test for harmless error in the federal constitutional realm goes back to *Chapman v. California*, 386 U.S. 18 (1967). The *Chapman* test is whether it appears "'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (*Yates v. Evatt*, 500 U.S. 391, 403 (1991)(*quoting Chapman*, 386 U.S. at 24)).. The *Yates* Court further clarified that the inquiry is not whether the jury considered the improper evidence or law at all, but rather, whether that error was "unimportant in relation to everything else the jury considered on the issue in question,

as revealed in the record." *Yates*, 500 U.S. at 403. *See also **Wilcher v. State***, 635 So.2d 789, 798 (Miss.1993). In the instant case, the evidence of DeLoach's guilt was indeed overwhelming. Thus, regardless of the fact that the admission of the 609(a)(1) impeachment evidence was error, such was harmless. Thus, this assignment of error is without merit.

## CONCLUSION

¶35. This Court finds that DeLoach's constitutional right to a speedy trial was not violated and thus, his first assignment of error is without merit.

¶36. Furthermore, we find that a private security officer is not considered government police enforcement merely because he is hired and paid by a housing authority and patrols the housing authority's property. Consequently, the private security guards involved in the present case were not subject to the restrictions of the Fifth Amendment and Miranda requirements. This assignment of error is without merit.

¶37. This Court does recognize that the trial court's admission of DeLoach's prior felony conviction was in conflict with the ***Peterson*** case and its progeny. The trial judge failed to give an on-the-record determination that the prior conviction's probative value outweighed its prejudicial effect as required under Rule 609(a)(1). However, any error made by the trial judge was harmless error in light of the overwhelming weight of the evidence of DeLoach's guilt. Therefore, this issue is meritless.

¶38. **CONVICTION OF POSSESSION OF COCAINE AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH ONE (1) YEAR SUSPENDED LEAVING TWO (2) YEARS TO SERVE, AND PAYMENT OF A FINE OF $10,000.00, WITH $5,000.00 BEING SUSPENDED, LEAVING A BALANCE OF $5,000.00 FINE TO BE PAID FOR THE USE AND BENEFIT OF JONES COUNTY, TOGETHER WITH ALL COURT COSTS, WITH CONDITIONS, AFFIRMED. APPELLANT IS GIVEN CREDIT FOR JAIL TIME SERVED.**

**PRATHER, C.J., PITTMAN, P.J., SMITH AND MILLS, JJ., CONCUR. WALLER, J., CONCURS IN RESULT ONLY. SULLIVAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS AND McRAE, JJ.**

**SULLIVAN, PRESIDING JUSTICE, DISSENTING:**

¶39. I disagree with the majority's conclusion that the 839-day delay between DeLoach's arrest and

trial was not a violation of his constitutional right to a speedy trial. Therefore, I must respectfully dissent. Examining the four factors set out in **Barker v. Wingo**, 407 U.S. 514 (1972), I find that this case requires reversal.

## LENGTH OF DELAY

¶40. I agree with the majority's statement that the delay here of 839 days between DeLoach's arrest and trial is presumptively prejudicial. **Smith v. State**, 550 So.2d 406, 408 (Miss. 1989). "This Court has held that a delay of 423 days would result in reversal absent the State's strength in the other factors." **Jasso v. State**, 655 So.2d 30, 33 (Miss. 1995). This factor weighs heavily against the State, and requires further analysis of the remaining **Barker** factors.

## REASON FOR THE DELAY

¶41. I agree with the majority that the most critical portion of the delay here was the 749-day period between DeLoach's arrest and his arraignment. The majority states that this portion of the delay is attributable to the State, but does not weigh as heavily against the State since DeLoach was incarcerated at Parchman on a burglary charge during this time. However, it is the duty of the State, not the defendant himself, to bring the criminal defendant to trial. **Vickery v. State**, 535 So.2d 1371, 1377 (Miss. 1988). I see no reason why DeLoach could not have been arraigned at some earlier date, even though incarcerated. The State certainly had full access to the defendant during his time at Parchman, and the delay until his release unreasonably prevented DeLoach from being informed of the charges against him and beginning trial preparation. Only a portion of the 90-day delay between DeLoach's arraignment and his trial are attributable to him for requesting continuances and entering plea negotiations. "[W]here the defendant has not caused the delay, and where the prosecution has declined to show good cause for the delay we must weigh this factor against the prosecution." **Vickery**, 535 So.2d at 1377. Contrary to the majority's analysis, since the State cannot show good cause for a majority of the 839-day delay between DeLoach's arrest and trial, this factor must weigh against the State.

## DEFENDANT'S ASSERTION OF HIS RIGHT

¶42. DeLoach asserted his right on September 18, 1996, in his Motion for a Fast and Speedy Trial, 590 days after his arrest. He reasserted his right by presenting his motion to dismiss based upon violation of his speedy trial right on March 27, 1997. The fact that DeLoach did not make any motion asserting his right to a speedy trial prior to that date does not weigh against him, because "[i]t is the burden of the State to see that a defendant receives a speedy trial." **Vickery**, 535 So.2d at 1377. The State must assume that the defendant wants a speedy trial and not presume that he is waiving that right. **Id**. Even after DeLoach asserted his right to a speedy trial, the State waited another 249 days before bringing him to trial. DeLoach effectively asserted his right to a speedy trial, so this factor also weighs against the State.

## PREJUDICE TO THE DEFENDANT

¶43. "The accused is not required to put forth an affirmative showing of prejudice to prove his right to a speedy trial was violated." **Atterberry v. State**, 667 So.2d 622, 627 (Miss. 1995). "This Court has stated that the State actually has to show lack of prejudice in order to prevail in this factor."

*Jasso*, 655 So.2d at 35.

> The final Barker factor is prejudice to the defendant. Here again the burden of production and persuasion are critical. Where the delay has been presumptively prejudicial, the burden falls upon the prosecution. *Prince v. State of Alabama*, 507 F.2d 693, 707 (5th Cir.1975). *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) states,
>
> > *Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial.
>
> *Moore*, 414 U.S. at 26, 94 S.Ct. at 189, 38 L.Ed.2d at 185; *see Trotter v. State*, 554 So.2d 313, 318 (Miss.1989). Intimations otherwise in our opinions, e.g., *Hughey v. State*, 512 So.2d 4, 8 (Miss.1987); *Beavers v. State*, 498 So.2d 788, 791-92 (Miss.1986) fade in the face of *Moore*'s clear expression.

*State v. Ferguson*, 576 So.2d 1252, 1255 (Miss. 1991). Even though DeLoach has made no showing of prejudice, he is not precluded from bringing an effective denial of speedy trial claim. *See Burgess v. State*, 473 So.2d 432 (Miss. 1985).

## CONCLUSION

¶44. Three of the four *Barker* factors weigh in favor of DeLoach, with the fourth factor relating to prejudice weighing only slightly against him. Applying the balancing test set out in *Barker*, I find that Hull's constitutional right to a speedy trial was violated. I would reverse DeLoach's conviction and sentence and remand the case to the Jones County Circuit Court.

**BANKS AND McRAE, JJ., JOIN THIS OPINION.**