816 So.2d 1022 (2002)
Joshua Scott MOORE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00511-COA.
Court of Appeals of Mississippi.
May 7, 2002.
*1024 George S. Shaddock, Pascagoula, for appellant.
Office of the Attorney General by John R. Henry, Jr., for appellee.
Before KING, P.J., BRIDGES, and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Joshua Scott Moore was indicted by the Jackson County grand jury on one count of manslaughter in violation of section 97-3-47 of the Mississippi Code and two counts of aggravated assault in violation of section 97-3-7(2)(a) of the Mississippi Code. Following a trial on the merits, Moore was convicted on both counts of aggravated assault, but the jury could not reach a verdict on the manslaughter count and a mistrial was declared to that portion of the indictment. The trial court sentenced Moore to twenty years on each aggravated assault count, to run concurrently, with thirteen years to be served under post-release supervision. Aggrieved, Moore appeals, requesting this Court to review the following issues:
I. WHETHER THE TRIAL COURT ERRED BY NOT QUASHING THE INDICTMENT.
II. WHETHER THE TRIAL COURT ERRED BY NOT QUASHING THE JURY PANEL.
III. WHETHER THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE TESTIMONY OF JAMES BOWMAN, A PRIVATE INVESTIGATOR, WHO INTERVIEWED MOORE.
IV. WHETHER THE TRIAL COURT ERRED IN PERMITTING A WITNESS TO TESTIFY AS TO THE RATE OF SPEED MOORE WAS TRAVELING JUST PRIOR TO THE COLLISION.
V. WHETHER THE VERDICTS ARE CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.

FACTS
¶ 2. On the evening of May 30, 1999, Joshua Moore got into his white Nissan truck and drove to his girlfriend's house. The night was clear. He and a friend had *1025 been drinking beer, although it is not clear how much beer.
¶ 3. In order to get to his girlfriend's house, Moore had to travel south on Mississippi State Highway 613. At the same time, Sheridan Moak, his wife, Helen Moak, and their granddaughter, Brandy McNamee, were traveling north on Highway 613. They were in a red Buick and on their way back from church.
¶ 4. Without warning, Moore crossed into the north bound lane of Highway 613, colliding with the vehicle driven by Sheridan Moak. Helen Moak, sitting on the front passenger's seat, was killed immediately by the impact. Sheridan Moak and Brandy McNamee also sustained significant injuries. No one witnessed the actual collision, and none of those surviving the accident, including Moore, could specifically recall the details of the accident.
¶ 5. Charges were brought against Moore for the death of Helen Moak as well as the assault and subsequent injuries to Sheridan Moak and Brandy McNamee. During the trial, the State called Glen Edwards. Edwards testified that he was driving directly in front of the Moaks and McNamee just before the accident. According to Edwards, a truck without headlights veered into the north bound lane, causing him to run off the road and into a ditch. He became concerned when the car that had been behind him failed to pass him. Moreover, he could no longer see headlights on the road behind him. Edwards, assuming that the suspicious truck had caused an accident, turned around to investigate. His apprehensions were correct.
¶ 6. Ricky Colvin, a volunteer fireman, arrived on the scene first. He went to Moore's vehicle; he could smell alcohol. He asked Moore if he had been drinking; Moore responded yes. Several others testified that a significant amount of beer cans were scattered all around Moore's vehicle following the accident.

LAW AND ANALYSIS

I. DID THE TRIAL COURT ERR BY NOT QUASHING THE INDICTMENT?
¶ 7. Moore first argues that the trial court erred when it overruled his motion to quash the manslaughter portion of the indictment. Count 1 of the indictment stated that Moore "by his culpable negligence and without authority of law, did feloniously kill and slay Helen Moak, a human being." Moore filed a motion to have Count 1 of the indictment quashed, arguing that it failed to allege and charge those specific acts or omission which the State contended constituted culpable negligence. Moore made no motion to quash the two counts of aggravated assault. As the record reflects, the jury could not reach a verdict as to the manslaughter charge; therefore, the trial court declared a mistrial in respect to that count.
¶ 8. Moore allocates a significant amount of space in his brief to the discussion of the rules governing the validity of indictments. However, before this Court can address the substance of Moore's arguments, we must first have jurisdiction over the issues presented for appeal. This Court does not generally have jurisdiction over issues that do not derive from final judgments. Smith v. State, 786 So.2d 423, 425(¶ 4) (Miss.Ct.App.2001). A mistrial is not a final judgment. Smith, 786 So.2d at 426(¶ 11); McGraw v. State, 688 So.2d 764, 769 (Miss.1997). See also Beckwith v. State, 615 So.2d 1134, 1140-41 (Miss.1992) (noting that final judgment rule has a few exceptions not found in case sub judice). As such, Moore's present appeal, in respect to the manslaughter charge, is not ripe for appellate review.

*1026 II. DID THE TRIAL COURT ERR BY NOT QUASHING THE JURY PANEL?
¶ 9. Prior to the trial, the Circuit Clerk of Jackson County summonsed 225 prospective jurors for service during the seventh week of the January 2000 term. Only 61 of those summonsed appeared for selection. Moore moved to have the entire panel quashed. Moore called the circuit clerk to the stand so that he could account for the low number of jurors appearing for selection. The clerk explained that, as part of Jackson County Circuit Court procedure, potential jurors could be excused in one of two ways: the prospective juror could come before the court and present his or her excuse, or the juror could fill out a signed affidavit detailing the excuse. The circuit clerk, through an agreement with the court, had the authority to accept the signed affidavits; however, if either the clerk or the court was not convinced as to the validity of the excuse, the court would call the juror for further questioning. Moore now contends that the Jackson County Circuit Clerk's power to accept excuses in the form of an affidavit is violative of sections 13-5-1-13-5-95 of the Mississippi Code.
¶ 10. The selection and empaneling of a jury is strictly a judicial function. Butler v. State, 241 So.2d 832, 835 (Miss. 1970). As such, a substantial degree of deference is given to the judiciary in determining its procedures for empaneling a jury, limited only by statutory guidelines. Mississippi Code Annotated § 13-5-87 states:
All the provisions of law in relation to the listing, drawing, summoning and impaneling juries are directory merely, and a jury listed, drawn, summoned or impaneled, though in an informal or irregular manner, shall be deemed a legal jury after it shall have been impaneled and sworn, and it shall have the power to perform all the duties devolving on the jury.
Miss.Code Ann. § 13-5-87 (1972). See also Adams v. State, 537 So.2d 891, 894 (Miss.1989). The Mississippi Supreme Court has interpreted this provision to mean that substantial compliance with the statute will not warrant the quashing of the venire. Griffin v. State, 494 So.2d 376, 379 (Miss.1986). Additionally, the court has stated that a jury panel should not be quashed unless the defendant can show that the failure to comply with the statute amounts to "actual fraud, prejudice, or such a flagrant violation of duty as to amount to fraud." Pulliam v. State, 515 So.2d 945, 948 (Miss.1987). See also Harris v. State, 406 So.2d 823, 824 (Miss.1981).
¶ 11. Of the 164 jurors who were not present, 35 appeared before another judge and were excused. The remaining 129 jurors did not show up either because they exercised an exemption in the form of a signed affidavit, refused to respond to the summons, or never actually received the summons. The clerk created a detailed list each week of how many jurors actually showed up, how many were excused, and how many failed to respond at all. Likewise, each of the reasons for excusing a juror was recorded. Moore makes no showing on appeal how this process violates the relevant statute pertaining to the selection of juries. Additionally, Moore ignores the relevant sections of the statute that specifically grant circuit clerks permission to accept affidavits from prospective jurors. See Miss.Code Ann. § 13-5-23 (Supp.2001). This argument is without merit.

III. DID THE TRIAL COURT ERR IN FAILING TO SUPPRESS THE TESTIMONY OF JAMES BOWMAN, A PRIVATE INVESTIGATOR, WHO INTERVIEWED MOORE?
¶ 12. Following the accident, the victims hired Neil Harris, a civil practice *1027 attorney, to investigate the possible causes of the collision and prepare a civil action against Moore. Harris hired James Bowman, a former police officer turned private investigator, to investigate the accident. As part of the investigation, Bowman located Moore and asked him questions about the events leading up to the accident. Moore readily answered all of Bowman's questions. Moore admitted that he had consumed alcohol prior to the accident.
¶ 13. In January, 2000, the district attorney contacted Harris and requested any information that could be useful in the prosecution of Moore. Harris, after receiving permission from his clients, turned over the statements Moore had made to Bowman. Several months later the indictment was returned. During the trial, the State called Bowman and questioned him about the conversation he had with Moore. Moore moved to suppress both the statement and Bowman's testimony, arguing that Bowman, as an agent of the State, violated his Fifth Amendment right against self-incrimination. The trial court denied Moore's motion, finding that "Bowman was acting clearly as a private citizen at the time that he took the statement from [Moore]." We agree.
¶ 14. The admissibility of evidence is within the trial court's discretion and, absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. Reynolds v. State, 784 So.2d 929, 932(¶ 7) (Miss.2001). As long as the trial court remains within the confines of the Mississippi Rules of Evidence, its decision to admit or exclude evidence will be accorded great deference. Johnston v. State, 567 So.2d 237, 238 (Miss.1990). Additionally, "the admission or exclusion of evidence must result in prejudice or harm, if a cause is to be reversed on that account." Jackson v. State, 594 So.2d 20, 25 (Miss.1992).
¶ 15. As the Mississippi Supreme Court has noted, "The Fifth Amendment privilege against self-incrimination ... has never been held to apply where private security personnel have questioned a defendant without any participation from the government." DeLoach v. State, 722 So.2d 512, 518(¶ 26) (Miss.1998), However, in DeLoach, the court went on to state that where there is a close connection between the private actor and the State, it is conceivable that an individual's Fifth Amendment right against self-incrimination might be violated. Id. (citing Roberts v. Louisiana Downs, Inc., 742 F.2d 221 (5th Cir. 1984)). The court concluded that "for private conduct to be turned into state action, there must be a clear nexus between the state or law enforcement and a private investigation." Id.
¶ 16. In the case sub judice, there are no facts indicating that Bowman had any nexus with the State of Mississippi at the time he interviewed Moore. The only evidence connecting Bowman to the State is his own testimony that he worked as a police officer in Pascagoula for over two decades. However, at the time of the investigation he had been retired from his duties as a police officer for several years and worked primarily as a private accident reconstructionist. Moreover, it is not disputed that Bowman was working under the sole direction of Harris at the time he took the statements from Moore. As the record reflects, the State did not know Bowman had taken a statement from Moore regarding the accident until one of the victims informed the district attorney that Harris might have some information that could be of aid to the prosecution. Without State action, Moore cannot claim that his Fifth Amendment privilege against self-incrimination was violated; therefore, his argument is without merit.

*1028 IV. DID THE TRIAL COURT ERR IN PERMITTING A WITNESS TO TESTIFY AS TO THE RATE OF SPEED MOORE WAS TRAVELING JUST PRIOR TO THE COLLISION?
¶ 17. The trial court allowed Glen Edwards to testify to the rate of speed Moore was traveling just prior to the accident. Edwards offered his opinion that Moore had been going between sixty and seventy miles per hour, well over the speed limit for Highway 613. Moore objected; however, the trial court, finding Edwards able to testify to the speed of Moore's vehicle, overruled the objection.
¶ 18. The rules governing the admissibility of lay opinions are well established, "First, the testimony must assist the trier of fact. Second, the opinion must be based on the witness' first hand knowledge or observation." Jones v. State, 678 So.2d 707, 710 (Miss.1996); Wells v. State, 604 So.2d 271, 278-79 (Miss.1992); M.R.E. 701. Where trial court error consists of the improper admission of evidence, we may only reverse where the error adversely affects a substantial right of a party. Havard v. State, 800 So.2d 1193, 1202(¶ 39) (Miss.Ct.App.2001).
¶ 19. Mississippi case law has recognized that a lay person is competent to offer an opinion as to the rate of speed of a moving car. Howard v. State, 346 So.2d 918, 920 (Miss.1977). However, such testimony must pertain to the speed of the offending vehicle at the time, or just prior to the collision. See Hewlett v. State, 607 So.2d 1097, 1104 (Miss.1992) (noting that "further that conduct is away from the scene of an accident the less probable that the conduct continued"). The question of whether the perceived driving was close enough in time to the accident is best left to the trial court's discretion. Howard, 346 So.2d at 920.
¶ 20. There is nothing in the record that convinces this Court that the trial judge abused his discretion in allowing Edwards's testimony. Contrary to Moore's argument, Edwards had first hand knowledge of Moore's driving just moments before the collision. Edwards testified that he was driving his vehicle along Highway 613 when, without warning, a truck without headlights swerved into his lane and forced him to steer his vehicle into a ditch. Another car had been traveling closely behind Edwards; he testified that the car was close enough to where he could see its headlights. This was the vehicle driven by Sheridan Moak. Edwards noticed that the vehicle behind him never passed while he was on the side of the road in the ditch. He turned his vehicle around, fearing that the truck had collided with the vehicle behind him. When he came upon the scene of the collision, his fears were confirmed. Edwards, almost having met the same fate as the Moaks and their granddaughter just moments before the collision, was in a good position to describe the events just moments before. Given this close proximity, we find that he was fully entitled to give an opinion as to the speed of Moore's vehicle.

V. WERE THE VERDICTS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 21. Moore claims that the verdict is contrary to the overwhelming weight of the credible evidence presented at trial. Moore first raised this argument in a motion for a new trial. It is well established that new trial decisions rest within the discretion of the trial court. McClain v. State, 625 So.2d 774, 781 (Miss. 1993). Moreover, this Court is obligated to accept all evidence supporting the verdict as true; we will reverse only where it is clear that the trial court has abused its discretion by refusing a new trial. Herring v. State, 691 So.2d 948, 957 (Miss. 1997). Ultimately, a motion for a new trial should only be granted when the verdict is *1029 so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable justice. Wetz v. State, 503 So.2d 803, 812 (Miss.1987).
¶ 22. Three witnesses testified that Moore was speeding and swerving into the wrong lane of Highway 613 prior to the collision. They each stated that the headlights on Moore's truck were not functioning. Furthermore, Moore admitted on two separate occasions that he had been drinking alcohol with a friend just before the collision. As the evidence showed, Ricky Colvin could smell alcohol when he arrived on the scene of the collision. Moreover, there were several empty cans of beer scattered around Moore's vehicle subsequent to the collision. Given the cumulative nature of this evidence and the lack of inconsistencies in the testimony of the witnesses, this Court finds that the trial court did not abuse its discretion in refusing a new trial.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTIONS OF COUNT II AND COUNT III AGGRAVATED ASSAULT AND SENTENCES OF TWENTY YEARS ON EACH COUNT, SEVEN TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THIRTEEN YEARS POST-RELEASE SUPERVISION, EACH TO RUN CONCURRENTLY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS and BRANTLEY, JJ., concur.