893 So.2d 1064 (2004)
Charles Edward WILSON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00814-COA.
Court of Appeals of Mississippi.
July 27, 2004.
Rehearing Denied October 26, 2004.
Certiorari Denied February 17, 2005.
*1066 James A. Williams, Brookhaven, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before KING, C.J., LEE and GRIFFIS, JJ.
LEE, J., for the Court.

PROCEDURAL HISTORY
¶ 1. On February 5, 2003, a jury in the Circuit Court of Lauderdale County found Charles Edward Wilson guilty of sale of cocaine. Wilson was sentenced to serve twenty-five years in custody of the Mississippi Department of Corrections. Aggrieved, Wilson now appeals to this Court asserting the following issues: (1) the trial court erred in accepting the State's racially-neutral reasons after his Batson challenges; (2) he was denied a fair trial when the State outlined its burden of proof during voir dire; (3) the trial court erred in allowing hearsay testimony into evidence; (4) he was denied effective assistance of counsel; and (5) the evidence was insufficient to support his conviction.

FACTS
¶ 2. On August 3, 2001, Agent John Peterson of the Mississippi Drug Task Force was working in an undercover capacity in Lauderdale County. Peterson, along with a confidential informant, drove to Wilson's residence and knocked on the door. Wilson answered, spoke with the informant, and went towards the direction of a known drug house. The informant waited in the car with Peterson. Shortly thereafter Wilson approached the car on the driver's side where Peterson was sitting and showed the men in the car a large rock-like substance. Wilson quoted the price of this rock as a "bill." Peterson then gave Wilson five $20 bills before taking the rock-like substance.
¶ 3. Peterson later turned the substance over to Greg Lea, another Drug Task Force agent. The substance was later determined to be a .94 gram rock of cocaine. The transaction was audio and video taped.

*1067 DISCUSSION OF ISSUES

I. DID THE TRIAL COURT ERR IN ACCEPTING THE STATE'S RACIALLY-NEUTRAL REASONS AFTER HIS BATSON CHALLENGES?
¶ 4. In his first issue, Wilson argues that the trial court erred in accepting the State's racially-neutral reasons for striking prospective black jurors. Our standard of review requires a reversal only if the factual findings of the trial judge are "clearly erroneous or against the overwhelming weight of the evidence." Tanner v. State, 764 So.2d 385(¶ 14) (Miss.2000). Any determination made by a trial judge under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), is accorded great deference because it is "based, in a large part, on credibility." Coleman v. State, 697 So.2d 777, 785 (Miss.1997). The term "great deference" has been defined in the Batson context as meaning an insulation from appellate reversal of any trial findings which are not clearly erroneous. Lockett v. State, 517 So.2d 1346, 1349 (Miss.1987).
¶ 5. The Batson decision provides procedural directives for the trial court to follow in detecting and disallowing the practice of using peremptory challenges to remove members of an identified racial group from jury service based upon nothing more than their racial identification. To successfully assert a Batson claim, the following procedure must occur:
First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.
Berry v. State, 728 So.2d 568(¶ 11) (Miss.1999) (citing Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). "When the prosecution gives race-neutral reasons for its peremptory strikes, the sufficiency of the defendant's prima facie case becomes moot." Manning v. State, 735 So.2d 323(¶ 28) (Miss.1999). Furthermore, if the defendant offers no rebuttal, the trial court may base its decision solely on those reasons given by the prosecution. Id. at (¶ 29).
¶ 6. As is the proper procedure, Wilson objected to the State's exercising its peremptory challenges against black jurors. The judge noted that all of the State's strikes were against black jurors and ruled that Wilson had made a prima facie case. The State then proceeded with its racially-neutral reasons for doing so as required by Batson.
¶ 7. The State's first peremptory challenge was exercised against juror number one, Willie Moss, a black female. Ms. Moss's son was convicted the previous year in Arizona for a drug violation. Wilson's only rebuttal was that Ms. Moss never stated that her son was treated unfairly. After checking his notes, the trial court noted that Ms. Moss did state that her son may have been unfairly prosecuted and accepted this as a race-neutral reason. We cannot find that the trial court erred in allowing the State's peremptory challenge against Ms. Moss.
¶ 8. The State's next peremptory challenge was exercised on juror number twelve, Felicia Brown, a black female. Ms. Brown had a family member or close friend convicted of selling drugs in 1996, but she did not know the details. Ms. Brown also had a family member or close friend convicted of a misdemeanor DUI and marijuana possession in 1999. However, *1068 Ms. Brown stated that she felt that person was not treated unfairly by the prosecutor's office or by law enforcement. On rebuttal, Wilson's attorney stated that Ms. Brown did not know the details nor did she say either person was mistreated, and that she was the second cousin of the chief of police. The trial court accepted the State's reasons as racially-neutral and nonpretextual. Again, we cannot find error in the trial court's decision to accept the State's peremptory challenge against Ms. Brown.
¶ 9. Juror number fourteen, Peter Malone, a black male, was the State's next peremptory challenge. Mr. Malone had a family member or close friend convicted of the sale of cocaine during July of the previous year. Mr. Malone stated that he did not know the details of the case. On rebuttal, Wilson's attorney stated that the conviction was last year, that Mr. Malone did not know the details, and that it would not have any influence on him. The trial court accepted the State's reason as racially-neutral and nonpretextual. We cannot find that the trial court erred in accepting the State's peremptory challenge against Mr. Malone.
¶ 10. The State's next peremptory challenge was exercised against juror number eighteen, Carolyn Mitchell, a black female. Ms. Mitchell attends the same church as Wilson's mother, but stated that she would not feel uncomfortable sitting on a jury in a case against Wilson. Wilson responded that Ms. Mitchell said it would not cause her any problems. The trial court found the State's reason to be racially-neutral. As the supreme court has held, knowing the defendant's mother is a valid race-neutral reason for striking a juror; we cannot find that the judge erred in accepting the prosecution's peremptory challenge. See Jasper v. State, 759 So.2d 1136(¶ 15) (Miss.1999); Manning v. State, 735 So.2d 323 (¶ 32) (Miss.1999).
¶ 11. On its last peremptory challenge, the State exercised it against juror number twenty, Patricia Barney, a black female. Ms. Barney had a family member or close friend convicted of embezzlement in 1999 or 2000, but she did not know all the details of the case. Wilson offered no rebuttal and the trial court accepted the State's reason as race-neutral. As Wilson offered no rebuttal, we cannot find that the trial court erred in accepting the State's peremptory challenge to Ms. Barney.
¶ 12. We find Wilson's first issue to be without merit.

II. WAS WILSON DENIED A FAIR TRIAL WHEN THE STATE OUTLINED ITS BURDEN OF PROOF DURING VOIR DIRE?
¶ 13. In his second issue, Wilson claims that the State's actions during voir dire denied him a fair trial. During voir dire the State related the facts of the case to the jurors then asked them:
If the facts and the law are as I stated beyond a reasonable doubt, would any of you find it difficult to find the defendant guilty  I'm sorry. Find it difficult to return a guilty verdict against the defendant if those facts that I laid out are proven?
After no response from any of the prospective jurors, the State then asked, "If you found those facts, would any of you vote not guilty even though a guilty verdict was required by the facts and the law?" Again, there was no response from any of the prospective jurors. At no time during this questioning did Wilson make an objection. Our supreme court has directed that prosecuting attorneys avoid questions seeking a promise or commitment from the jury to convict if the State proved certain facts. *1069 West v. State, 553 So.2d 8, 22 (Miss. 1989). However, "the court has often held that a party waives any and all claims regarding the composition of his jury if he fails to raise an objection before the jury is sworn." Otis v. State, 853 So.2d 856(¶ 36) (Miss.Ct.App.2003). See also Shaw v. State, 540 So.2d 26, 27 (Miss.1989); Thomas v. State, 517 So.2d 1285, 1287 (Miss.1987); Pickett v. State, 443 So.2d 796, 799 (Miss.1983). As Wilson never objected to the State's questions, we find this issue to be waived for purposes of this appeal.

III. DID THE TRIAL COURT ERR IN ALLOWING HEARSAY TESTIMONY INTO EVIDENCE?
¶ 14. In his third issue, Wilson contends that the trial court erred in allowing hearsay testimony into evidence. Specifically, Wilson argues that since the confidential informant did not testify at trial, then the agents could not testify as to anything the confidential informant said during the buy. In his brief Wilson cites a good deal of testimony from Peterson and Lea which he claims are inadmissible hearsay. However, as Wilson never objected during Lea's testimony, we consider any arguments concerning Lea's testimony waived for the purposes of appeal.
¶ 15. Furthermore, Wilson also failed to object to parts of Peterson's testimony which he now claims are inadmissible hearsay. Therefore, we will only discuss three instances during Peterson's testimony where Wilson made an objection on the record. Wilson's first objection occurred while Peterson was making comments about why the confidential informant was working with the Drug Task Force. Wilson objected stating, "I'm going to object to what he thinks." The trial court sustained the objection unless the State could establish some personal knowledge.
¶ 16. Wilson's second objection occurred when Peterson stated that the confidential informant "came back to his vehicle. And at that point he told me that...." Wilson merely stated, "Objection," to which the trial court responded, "Sustained as to what he said." The State then changed its line of questioning.
¶ 17. Wilson objected a third time when Peterson was relating a statement made by another person on the scene of the buy. Peterson stated that this individual approached their car and "asked us what we were going to do after we left the area." Wilson simply stated, "Objection," to which the State responded, "Judge, it is not offered for the truth of the matter, it is just the fact that it was said." The trial court responded that he also found the statement to be offered for the fact that it was stated and, subsequently, overruled Wilson's objection.
¶ 18. It is well established that the appellant must object with specificity in order to preserve an error for appeal. Renfrow v. State, 863 So.2d 1047(¶ 38) (Miss.Ct.App.2004). Two of Wilson's objections were general objections and the other one was not specific as to a hearsay violation. It is also "the rule in this State that where an objection is sustained, and no request is made that the jury be told to disregard the objectionable matter, there is no error." McGowan v. State, 706 So.2d 231(¶ 46) (Miss.1997). At no time after making his objections did Wilson ask the trial court to instruct the jury to disregard the statements. We find that Wilson's hearsay assertions were not properly preserved for appeal.

IV. WAS WILSON DENIED EFFECTIVE ASSISTANCE OF COUNSEL?
¶ 19. In his fourth issue, Wilson argues that he was denied effective assistance of counsel. Specifically, Wilson claims that his trial counsel disagreed with Wilson's proposed defense, namely that Wilson was *1070 offering sex in exchange for cash. Wilson also argues that his trial counsel should have objected to numerous "hearsay" statements made during the course of the trial, his trial counsel should have gotten 911 tapes purporting to show that Wilson had called to complain about drug dealing, and that his trial counsel should have subpoenaed the confidential informant. Wilson complains that his trial counsel should have used a strike to eliminate Belinda Bonner from the jury, as she worked part-time in the district attorney's office.
¶ 20. Wilson argues that defense counsel should have objected to all statements concerning the confidential informant as they were all hearsay. However, in looking at the record, it is clear that most of the statements made by the agents testifying about the drug buy were not hearsay. Wilson also complains that his trial counsel should have found out more about the confidential informant's motives for working with the Task Force through cross-examination of the agents.
¶ 21. We look to our standard of review concerning claims of ineffective assistance of counsel. While looking to the totality of the circumstances, we must determine whether Wilson proved his counsel's performance was deficient and whether this deficiency resulted in prejudice to Wilson. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We must discover if any of the purported errors were "outside the range of professionally competent assistance." Id. at 690.
¶ 22. Wilson merely gives blanket reasons as to why his counsel was ineffective. Wilson does not show that his trial counsel's trial strategies were "outside the range of professionally competent assistance" nor does he show that any deficiency on the part of his trial counsel resulted in any prejudice to his case. We cannot find that Wilson's trial counsel rendered ineffective assistance of counsel.

V. WAS THE EVIDENCE INSUFFICIENT TO SUPPORT WILSON'S CONVICTION?
¶ 23. In his last issue, Wilson contends that the evidence was insufficient to support the verdict and he should be given a new trial. Although Wilson seeks a new trial, his argument deals specifically with the sufficiency of the evidence. When testing the legal sufficiency of the State's evidence, the applicable standard of review is as follows: "the court must review the evidence in the light most favorable to the [S]tate, accept as true all the evidence supporting the guilty verdict, and give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence." McClain v. State, 625 So.2d 774, 778 (Miss.1993). The court will reverse only when reasonable and fair-minded jurors could find the accused not guilty. Wetz v. State, 503 So.2d 803, 808 (Miss.1987). Furthermore, it is within the discretion of the jury to accept or reject testimony by a witness, and the jury "may give consideration to all inferences flowing from the testimony." Mangum v. State, 762 So.2d 337(¶ 12) (Miss.2000) (quoting Grooms v. State, 357 So.2d 292, 295 (Miss.1978)).
¶ 24. Agent Peterson testified that it was Wilson who handed him the cocaine in exchange for one hundred dollars. Audio and video tapes of the transaction were admitted into evidence for the jury to hear and see. Peterson also identified Wilson at a photographic line-up eleven days after the drug transaction. In reviewing the record, we cannot find that there was insufficient evidence to support the guilty verdict. Furthermore, the jury found Peterson to be a credible witness and believed his version of the events. This issue is without merit.
*1071 ¶ 25. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $5,000, IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO LAUDERDALE COUNTY.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.