[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 821 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 822 
¶ 1. A Lauderdale County jury found Ruby Dell Roberson Faucette Young guilty on three counts: accessory-after-the-fact of the crime of possession of marijuana with intent to distribute, possession of a firearm by a felon, and possession of stolen property. Young appeals from these convictions, asserting (1) that her *Page 823 
indictment insufficiently alleged the crime of accessory-after-the-fact; (2) that the evidence supporting her conviction on each count was insufficient; (3) that the erroneous admission of hearsay testimony denied her Sixth Amendment right of confrontation; (4) that she was denied a fair trial due to the State's inflammatory argument; (5) that she was denied a fair trial because the State exacted a promise from the jury that if certain evidence was proven the jury would return a guilty verdict; and (6) that she received ineffective assistance of counsel.
 ¶ 2. We find that there was insufficient evidence supporting Young's conviction of possession of stolen property. Therefore, we vacate her conviction of that crime. We find that Young's other issues are without merit, and affirm her convictions of accessory-after-the-fact and possession of a firearm by a felon.
 FACTS ¶ 3. In the summer of 2001, Lauderdale County Deputy Sheriff Joe White and another deputy went to Young's home to serve Young's son, Jason Roberson, with a bench warrant dated May 31, 2001. The bench warrant concerned Roberson's failure to appear for arraignment on a charge of possession of marijuana with intent to distribute. Young told deputies that Roberson was not there. Young consented to a search of the premises for Roberson, who was not found. Before departing, Deputy White warned Young that she would be charged with "harboring" if she gave Roberson sanctuary, and told her to dial 911 in the event Roberson appeared. The next day, Deputy White returned to Young's residence, again looking for Roberson. Young told Deputy White that Roberson had just left, but that she had called 911 as instructed.
 ¶ 4. In February 2002, Young moved to a trailer. On February 15, 2002, law enforcement received information that Roberson was at Young's trailer. Several deputies went to the trailer. Roberson's car was parked outside. Deputy John Calhoun knocked and announced, but no one came to the door. The trailer's windows were open and he could hear people moving around inside and whispering. He called Roberson's cell phone number and heard a phone ringing contemporaneously inside the trailer. Deputies obtained a warrant to search the trailer for Roberson. While waiting for the warrant, Deputy Michael Street positioned himself near a rear window of the trailer. He heard people moving just inside. When the warrant arrived and deputies entered the trailer, Deputy Street found Young, Roberson, and Roberson's girlfriend in a bed in a rear bedroom. The time that had elapsed between the deputies' initial arrival and their entrance of the trailer was approximately one hour. Subsequently, Roberson was convicted of possession of marijuana with intent to distribute.
 ¶ 5. In the course of arresting Roberson, the deputies observed a substance appearing to be marijuana on a coffee table. The presence of marijuana in plain view resulted in a search of Young's residence. The deputies discovered a handgun in Young's bedroom. They subsequently discovered that the handgun had been reported stolen. The handgun belonged to Young's former husband and had a resale value of between $280 and $300.
 ¶ 6. The trial occurred on May 29, 2002. Young testified that, in February 2002, she had thought Roberson's charge had been dismissed. She based this assumption on gossip to the effect that all charges brought against numerous citizens pursuant to the activities of a certain narcotics officer had been dismissed due to the officer's *Page 824 
misconduct. Since Roberson was apprehended by that officer, Young assumed his charge had been dismissed. However, Young admitted that she had never ceased worrying about the charge against Roberson. On direct examination, Young stated that Roberson had arrived on the night of February 14 and that she had thought he was just passing through to see his girlfriend, who lived with Young. On cross-examination, Young testified that she had been under the influence of narcotic medication due to a recent back surgery and had not been aware that Roberson was in her trailer until the deputies apprehended Roberson. Young stated that, due to the medication, she had failed to hear the officers knocking for some time, and had finally stumbled to the door and placed her hand on the doorknob at the moment the deputies entered the trailer.
 ¶ 7. Regarding the handgun, Young testified that it belonged to her former husband and that she was not aware that she still had it until the night before her arrest when she discovered it packed in a box. Young testified that she had planned to return the gun to her ex-husband. While Young admitted that she knew the gun was in her possession the night before her arrest, she denied having stolen the gun or having received it with knowledge of its having been stolen. Young admitted that she was a felon, having been convicted in 1991 of accessory before the fact of delivery of over an ounce of marijuana and that she had been sentenced to five years with four years suspended.
 ¶ 8. The jury found Young guilty on all three counts. On count I, the court sentenced Young to five years, with three years to serve, two years suspended, and three years on post-release supervision, fined her $1,000 and court costs of $248, and ordered her to participate in a long term alcohol and drug treatment program. On counts II and III, the court sentenced Young to three years each, with the sentences for all three counts to run concurrently. The circuit court denied Young's motion for a JNOV or a new trial.
 LAW AND ANALYSIS
I. WAS COUNT ONE OF THE INDICTMENT SUFFICIENT TO OBTAIN AN Accessory-after-the-fact CONVICTION?
 ¶ 9. Young was convicted of accessory-after-the-fact to possession of marijuana with intent to distribute. Young asserts that the indictment charged her with attempted accessory-after-the-fact, not with the completed crime of accessory-after-the-fact. Therefore, Young argues, the indictment was defective because it failed to afford her proper notice of the crime of which she was convicted.
 ¶ 10. This Court recognizes that "one accused of a crime is entitled to know the specific nature of the allegations against him so that he can prepare his defense, rather than be left guessing as to what specific activity the State contends is a violation of the criminal statute." White v. State,851 So.2d 400, 403 (¶ 5) (Miss.Ct.App. 2003). The crime of accessory-after-the-fact is codified at Mississippi Code Annotated § 97-1-5 (Rev. 2000). The statute provides that a person is guilty as an accessory-after-the-fact if she has "concealed, received, or relieved any felon, or [has] aided or assisted any felon, knowing that such person has committed a felony, with intent to enable such felon to escape or to avoid arrest, trial, conviction or punishment. . . ." Id. The portion of the indictment charging Young with accessory-after-the-fact provided, in pertinent part:
 RUBY DELL ROBERSON FAUCETTE YOUNG AKA RUBY DELL ROBERSON FAUCETTE YOUNG in *Page 825 
said County and State, on or about the 15th day of February, A.D., 2002, did then and there wilfully, unlawfully, and feloniously conceal or receive or aid or assist JASON ROBERSON knowing that he had committed the felony offense of THE CRIME OF POSSESSION OF MARIJUANA WITH INTENT in an attempt to assist JASON ROBERSON to evade detection and/or capture, in violation of Mississippi Code Annotated Section 97-1-5. . . .
 ¶ 11. The language of the indicted offense substantially tracked the statutory definition of the crime. Young argues that the language stating that she acted "in an attempt to assist Jason Roberson to evade detection and/or capture" signified that the crime charged was attempted accessory-after-the-fact. This argument is without merit. Plainly, the indictment alleged a completed act, which was that Young concealed or received or aided or assisted Roberson. The language stating that Young acted "in an attempt to assist Roberson" was a description of the mental state required for a conviction of accessory-after-the-fact, which is that the defendant have acted with "intent to enable" a felon "to escape or avoid arrest, trial, conviction or punishment." Miss. Code Ann. § 97-1-5 (Rev. 2000). The indictment for accessory-after-the-fact properly charged Young with the crime for which she was convicted.
II. DID THE TRIAL COURT ERRONEOUSLY ADMIT PREJUDICIAL HEARSAY?
 ¶ 12. Young argues that, on two instances, critical hearsay was introduced at trial, over counsel's objection, which violated her right to confront witnesses secured by the Confrontation Clause of the Sixth Amendment. The confrontation clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. The first instance in which alleged hearsay came into evidence was during Deputy White's testimony about his contact with Young in June 2001, when he instructed Young to call 911 if Roberson appeared. The following exchange occurred:
 Q. When, if you recall, did you return, if you did return, to Ms. Young's house?
 A. We came back the next day. And she stated that he was there and she tried calling 911, but we never got that call.
Q. Who — how did you verify that information?
A. Through dispatch. There was no record of it.
Q. You or Deputy Pickett call —
A. Deputy Pickett did.
By Mr. Capers: We object to hearsay, Judge.
By the Court: He already answered it.
 ¶ 13. Young contends that Deputy White's statement that Deputy Pickett checked with dispatch and was told there was no record of a 911 call from Young was inadmissible hearsay. We agree. Hearsay is an out of court statement offered for its truth. M.R.E. 801(c). Deputy White's statement that dispatch had no record of Young's 911 call was offered to show that no call from Young was, in fact, received by dispatch. Moreover, Deputy White testified that Deputy Pickett told him dispatch had no record of the call. Deputy White's testimony about what Deputy Pickett told him, that dispatch had no record of the call, was likewise offered for its truth. Therefore, Deputy White's testimony was double hearsay. It did not fall within a hearsay exception that would render it admissible. M.R.E. 805. The trial court erred by failing to sustain *Page 826 
Young's objection to the hearsay testimony.
 ¶ 14. The State contends that Young waived this contention by failing to make a contemporaneous objection. We disagree. "The rule governing the time of objection to evidence is that it must be made as soon as it appears that the evidence is objectionable, or as soon as it could reasonably have been known to the objecting party, unless some special reason makes a postponement desirable for him which is not unfair to the proponent of the evidence." Sumner v. State, 316 So.2d 926, 927 (Miss. 1975) (citing Williams v. State, 171 Miss. 324, 327, 157 So. 717, 717
(1934)). Certainly, Young's objection was sufficiently close in time to Deputy White's hearsay testimony to have preserved the error for appellate review.
 ¶ 15. Having found error in the admission of the hearsay testimony, we proceed to determine whether the error requires reversal. For error to be predicated on the admission or exclusion of evidence, the erroneous ruling must have affected a substantial right of a party. M.R.E. 103(a). Further, confrontation clause violations are subject to harmless error analysis. An otherwise valid conviction will not be set aside for a constitutional error "if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall,475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).
 Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.
Id. Applying this analysis, our supreme court recently found that the erroneous admission of a statement of a non-testifying co-defendant was harmless beyond a reasonable doubt due to the overwhelming weight of the evidence against the defendant. Clarkv. State, 891 So.2d 136, 142 (¶ 30) (Miss. 2004).
 ¶ 16. The erroneously admitted hearsay concerned Young's charge of accessory-after-the-fact. The hearsay testimony that dispatch records showed no call was received from Young contradicted Young's testimony that she had called 911 as instructed by Deputy White. This hearsay was probative of Young's intent to aid Roberson in evading arrest in June 2001 because, if she indeed had called 911 upon his appearance at her residence, it would have been difficult to infer that she intended to assist Roberson at that time. However, Young was not arrested and charged based upon the June 2001 incident. Rather, she was arrested on February 15, 2002, after Roberson was found inside her trailer. Though the 911 call issue was occasionally revisited by both parties throughout the trial, the evidence of Young's intent, or lack thereof, to aid Roberson in June 2001 was not especially probative of her intent, or lack thereof, to aid Roberson seven months later. Therefore, the issue of whether or not Young had called 911 in June 2001 was of relatively low importance in the prosecution's case against Young.
 ¶ 17. There was overwhelming evidence that, on February 15, 2001, Young's conduct conformed with the elements of the crime of accessory-after-the-fact. To secure a conviction for accessory-after-the-fact, *Page 827 
the State must prove that a completed felony was committed, that the accused concealed, received, aided or assisted the felon, with knowledge that the person had committed a felony, and that the accused rendered aid with the intent to enable the felon to escape or avoid arrest, trial, conviction or punishment. Harrisv. State, 290 So.2d 924, 924 (Miss. 1974). The evidence of Roberson's conviction of possession of marijuana with intent to distribute showed that he had completed a felony. Young allowed Roberson to stay overnight at her trailer. She did not answer the door after deputies knocked and announced. Young failed to emerge during the entire time, approximately one hour, that the deputies surrounded her trailer. While outside the trailer, Deputy Street heard people moving in the area of the rear bedroom. Deputy Street found Young, Roberson, and Roberson's girlfriend in a bed in the rear bedroom. Young was conscious and communicative. This evidence conflicted with Young's testimony that she slept through the deputies' knocking and was at the door when the deputies entered the trailer.
 ¶ 18. Further, there was testimony that Young knew Roberson was a felon. Young stated that, when the bench warrant issued, she had to pay Roberson's appearance bond. Young admitted she had never ceased worrying about Roberson's charge and her assumption the charge had been dropped was based upon gossip. Deputy White testified that he informed Young twice in June 2001 that there was an outstanding bench warrant for Roberson. Deputy Calhoun stated that he informed Young on two occasions between May 31, 2001 and February 15, 2002 that Roberson was wanted by the sheriff's department. The erroneous admission of the hearsay statement that no 911 call had been recorded in June 2001 was harmless beyond a reasonable doubt due to the low importance of the statement and to the overwhelming evidence that, on February 15, 2002, Young knew Roberson was a felon seeking to avoid justice and that she aided his avoidance of justice. This issue is without merit.
 ¶ 19. Young also argues that prejudicial hearsay was introduced during Deputy Calhoun's testimony. Deputy Calhoun testified that, on February 14, 2002, he and Deputy Ricky Presson had gone to Young's former address "[a]nd through some other information from a person we had talked to, obtained information that the vehicle Mr. Roberson was traveling in now was found out at the address of where she had moved to." Young objected to hearsay, but the objection was overruled.
 ¶ 20. Deputy Calhoun's statement of what an informant told him was not offered to show Roberson's car was, in truth, at Young's trailer, but only to show how Deputy Calhoun came to believe that Roberson might be found at Young's trailer on February 15, 2002. The statement was not hearsay. "To the extent necessary to show why an officer acted as he did, an informant's tip is admissible." Hill v. State, 865 So.2d 371, 380 (¶ 36) (Miss.Ct.App. 2003). This issue is without merit.
III. WAS THE EVIDENCE SUPPORTING YOUNG'S CONVICTION OF ACCESSORY-AFTER-THE-FACT SUFFICIENT?
 ¶ 21. Young contends that insufficient evidence supported her conviction of accessory-after-the-fact and, therefore, the court should have sustained her motion for a JNOV. A motion for a JNOV challenges the sufficiency of the evidence of each element of the offense. Edwards v. State, 469 So.2d 68, 70 (Miss. 1985). In reviewing the denial of a JNOV, we view all of the evidence in the light most favorable to the *Page 828 
State and give the State the benefit of all favorable inferences that reasonably may be drawn from the evidence. Id. Considering the evidence in this manner, we will affirm if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Bush v. State, 895 So.2d 836,846 (¶ 16) (Miss. 2005).
 ¶ 22. Viewing the evidence in the light most favorable to the State, the evidence was sufficient to sustain Young's conviction of accessory-after-the-fact. As discussed above in Issue II, there was copious evidence that Roberson had committed a felony, that Young knew Roberson was wanted by authorities, and that Young aided Roberson in evading justice by harboring him and concealing him from law enforcement. Based on this evidence, a rational jury could have found Young guilty of accessory-after-the-fact beyond a reasonable doubt. This issue is without merit.
IV. WAS THE EVIDENCE SUPPORTING YOUNG'S CONVICTION OF POSSESSION OF A FIREARM SUFFICIENT?
 ¶ 23. Mississippi Code Annotated § 97-37-5(1) (Rev. 2000) makes it a crime for "any person who has been convicted of a felony . . . to possess any firearm. . . ." Young argues that the evidence that she possessed the handgun was insufficient. Young admitted that, the night before her arrest, she discovered her ex-husband's handgun while unpacking a box and placed it on the floor, where it was discovered by the deputies. She stated that her ex-husband had been awarded the handgun in a divorce decree and that she intended to return it to her ex-husband at a later time.
 ¶ 24. Young did not own the trailer, she was a tenant. Nor did Young have exclusive possession of the trailer, because she shared it with Roberson's girlfriend. When reviewing the sufficiency of the evidence of possession, "in cases where the defendant is not the owner of the premises or in exclusive possession, then the State must prove some `competent evidence connecting him with the contraband.'" Gavin v. State,785 So.2d 1088, 1093 (¶ 17) (Miss.Ct.App. 2001) (quoting Powell v. State,355 So.2d 1378, 1379 (Miss. 1978)). To fulfill this requirement, there must be evidence that the defendant was intentionally and consciously in possession of the weapon on the day charged.
 ¶ 25. We find that there was sufficient evidence fulfilling the element of possession. Young, herself, unpacked the gun from the box and placed it on the floor beside her bed, where it remained until the moment of her arrest. From this evidence, a reasonable jury could infer that Young consciously exercised dominion and control of the handgun. See id. at 1094 (¶ 24). There was evidence, including Young's own admission, that she had been previously convicted of a felony. Therefore, there was sufficient evidence that Young was a felon in possession of a firearm.
V. WAS THE EVIDENCE SUPPORTING YOUNG'S CONVICTION OF POSSESSION OF STOLEN PROPERTY SUFFICIENT?
 ¶ 26. Young attacks the sufficiency of the evidence supporting her conviction of possession of stolen property. "A person commits the crime of receiving stolen property if he intentionally possesses, receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is possessed, received, retained or disposed of with intent to restore it to the owner." Miss. Code Ann. § 97-17-70(1) (Supp. 2003). Young was convicted under subsection 97-17-70(3) (Rev. 2000), which, at the time of *Page 829 
Young's conviction, provided an enhanced penalty if the value of the stolen property exceeded $250. While this crime was referred to at trial as "possession of stolen property," the statute under which Young was indicted and convicted reveals that the crime is correctly referred to as "receiving stolen property." This Court will refer to the crime as such throughout our discussion of the sufficiency of the evidence.
 ¶ 27. The following facts constituted the totality of the evidence pertinent to the charge of receiving stolen property. Deputy Calhoun testified that he found the handgun on the floor next to Young's bed. Deputy Calhoun discovered that the handgun had been reported as having been stolen from the Memphis Police Department. But, further investigation led to his conclusion that the legal owner of the handgun was Ricky Young, Young's ex-husband. Deputy Calhoun testified that the handgun had been awarded to Ricky in the decree divorcing the Youngs.[1] The decree ordered Young to return the gun to Ricky if she found it. Deputy Calhoun stated that, later, Ricky had been advised to report the gun as stolen. Apparently, Ricky did so.
 ¶ 28. Young denied having known that the gun was stolen property. Young testified that she and Ricky had separated in 1999 and that she had last seen the handgun underneath the seat of Ricky's car. She had been unaware that the gun was amongst her belongings until she found it in a box while unpacking on the night before her arrest. On direct examination, she stated that she had intended to return the gun to her ex-husband to comply with the court order, but had not taken any steps to do so because she had no way to contact anyone about the gun. Young said that, when she unpacked the gun, her telephone had not yet been connected and she could not drive due to her back medication. On cross-examination, Young admitted to having lied about lacking immediate means to contact anyone about the gun because she could have asked Roberson's girlfriend to drive her to a telephone.
 ¶ 29. Upon Young's motion for a directed verdict, the State argued that the evidence was sufficient to enable the charge of receiving stolen property to go to the jury. The State pointed out that it had established that Ricky was the lawful owner of the handgun. The State contended that Young had retained possession of the handgun knowing that it was not hers and that it was Ricky's property. The State renews these arguments on appeal.
 ¶ 30. The crime of receiving stolen property requires proof beyond the fact that the defendant was in possession of property reported as stolen. The person must intentionally possess, receive, retain or dispose of property stolen by another with knowledge or upon reasonable grounds to believe the property has been stolen. Washington v. State, 726 So.2d 209, 212-13 (¶ 10) (Miss.Ct.App. 1998). If the person performs these acts with the intent to restore the property to its owner, no crime has been committed under the statute. Miss. Code Ann. § 97-17-70(1) (Supp. 2003). Moreover, a person cannot feloniously receive what he, himself, has stolen. "It is elementary law that one who steals property cannot be convicted of receiving, concealing or aiding in concealing the property stolen." Hentz v. State,489 So.2d 1386, 1389 (Miss. 1986). This is because the statute punishing persons in receipt of stolen property is not intended as a double penalty for theft crimes, but to punish those who "make theft easy or profitable." *Page 830 Id. In Hentz, the supreme court reversed the appellant's conviction of receiving stolen property because the evidence demonstrated that the appellant had stolen the property at issue and, therefore, was guilty of grand larceny, not receiving stolen property. Id. The State acknowledges this law in its brief.
 ¶ 31. Viewing the evidence in the light most favorable to the State with all reasonable inferences in favor of the verdict, the evidence was insufficient to sustain Young's conviction of receiving stolen property. There was no evidence that a third person stole the gun from Ricky and that Young had obtained possession of it from that person. Rather, the State's entire case rested upon the jury's conclusion that Young knowingly took the gun from Ricky or unlawfully retained it after her divorce. Since the evidence was that Young, herself, took the property at issue, the State's case pointed to Young's guilt of a theft crime. But, Young was charged with receiving a stolen handgun, not with theft of the handgun. "[W]here a defendant is charged with receiving stolen goods, and the evidence shows that he is guilty of the larceny of the goods in question, he cannot be convicted of the offense with which he is charged." Id. (citingManning v. State, 129 Miss. 179, 181, 91 So. 902, 903 (1922));see also Williams v. State, 595 So.2d 1299, 1303 (Miss. 1992) (stating, "the fact that one has stolen the property at issue is generally adequate to require a directed verdict of acquittal should that person be charged with receipt of stolen property"). In the instant case, there was no evidence that Young received the gun from some third person who had stolen it. Rather, the evidence was that Young, herself, whether feloniously or not, took the gun from its lawful owner. Thus, the evidence that Young knowingly received stolen property was insufficient. We vacate Young's conviction of possession of stolen property.
VI. DID THE STATE ENGAGE IN IMPROPER AND INFLAMMATORY ARGUMENT?
 ¶ 32. Young argues that the State engaged in egregious and inflammatory actions which denied her a fair trial. Specifically, Young avers that the court should not have admitted Roberson's entire criminal history and the court file on Young's 1991 felony conviction of accessory before the fact to delivery of over an ounce, but less than a kilo, of marijuana. Young also argues that the prosecution's closing argument was inflammatory.
 ¶ 33. During the trial, the State proffered a composite exhibit concerning Roberson's conviction of possession of marijuana with intent to distribute. The exhibit consisted of certified copies of Roberson's indictment, petition for appointment of counsel, petition to enter a guilty plea, and the judgment of conviction. Young objected to the exhibit on the ground of relevancy, arguing that the exhibit concerned Roberson, not the events underlying Young's indictment.
 ¶ 34. On appeal, Young argues that the composite exhibit was prejudicial and that the sole function of the exhibit was "to tell the jury that Ruby Young and her son . . . were a `criminal family.'" Young's specific objection to relevancy demonstrated that she did not consider the prejudice argument that she now raises on appeal. Davis v. Singing River Elec. Power Ass'n,501 So.2d 1128, 1131 (Miss. 1987). Therefore, we decline to consider this argument.
 ¶ 35. Young argues that the trial court erroneously admitted documents concerning her own prior felony conviction. Young did not object to the introduction of this evidence at the trial and, therefore, waived appellate consideration of this issue. M.R.E. 103(a)(1); McCaine v. State, 591 So.2d 833, 835 (Miss. 1991). *Page 831 
 ¶ 36. Young also contends that the State's closing argument was inflammatory. During closing arguments, the State's attorney stated that Young had been convicted of selling drugs in 1991 and that the jury should not mistake that she was a "convicted dope dealer." Young objected on the ground that there was no evidence that Young was ever charged with selling drugs. The State's attorney responded that Young's 1991 conviction was for a drug sale. The Court stated that, while it could not recall what Young had been convicted of in 1991, the conviction spoke for itself. Argument continued. Young argues that the prosecution's statement was unfairly prejudicial.
 ¶ 37. During closing arguments, a prosecutor may comment upon facts introduced into evidence and may draw whatever deductions and inferences seem to him to be proper from the facts. Flowersv. State, 842 So.2d 531, 554 (¶ 64) (Miss. 2003). Young's 1991 conviction was for accessory before the fact to sale of marijuana, not for sale of marijuana. Therefore, the prosecutor's statement that Young had been convicted of selling drugs was not based upon the evidence and was inaccurate. We decline to find that the prosecution's misstatement constitutes grounds for reversal. The error was corrected by the court's statement, which directed the jury to the evidence showing the crime for which Young was actually convicted. Sanders v. State, 439 So.2d 1271,1276 (Miss. 1983). This issue is without merit.
VII. DID THE COURT ERR BY ALLOWING THE STATE TO EXACT A PROMISE FROM THE JURY THAT IF CERTAIN PROOF WAS SHOWN, THEY WOULD RETURN A VERDICT OF GUILTY?
 ¶ 38. During voir dire, the prosecutor outlined the facts the State planned to prove at the trial. Then, the prosecutor asked the venire, "if the facts and the law are as I stated beyond a reasonable doubt, would any of you find it difficult in returning a verdict of guilty against the defendant as to those three counts?" The venire was silent. Then, the prosecutor stated, "Those will be the basic facts. Do any of you have a problem with the fact that this will be the proof? I am telling you now this will be the case. And if you have a problem with that information, please tell us now." Again, the venire was silent. On appeal, Young contends that it was reversible error for the State to outline its proof to the prospective jurors and then ask if they would find it difficult to return a verdict if they found those facts beyond a reasonable doubt.
 ¶ 39. Uniform Rule of Circuit and County Court Practice 3.05 provides, "[n]o hypothetical questions requiring any juror to pledge a particular verdict will be asked." Our supreme court has stated that it is improper for prosecutors to exact a promise or commitment from the jury to convict if the State proves certain facts. West v. State, 553 So.2d 8, 22 (Miss. 1989). However, this issue is waived if the defendant fails to object to the State's improper questions before the jury is empaneled. Wilsonv. State, 893 So.2d 1064, 1068 (¶ 13) (Miss.Ct.App. 2004). Since Young failed to object to the State's questions before the jury was empaneled, Young waived appellate consideration of this issue. Id.
VIII. WAS YOUNG DENIED EFFECTIVE ASSISTANCE OF COUNSEL?
 ¶ 40. With new appellate counsel, Young asserts that her trial counsel was constitutionally ineffective. This Court applies the two-part test from Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, *Page 832 80 L.Ed.2d 674 (1984), to claims of ineffective assistance of counsel. McQuarter v. State, 574 So.2d 685, 687 (Miss. 1990). Under Strickland, the defendant bears the burden of proof that (1) counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. Id. We examine the totality of the circumstances in determining whether counsel was effective. Id. There is a strong but rebuttable presumption that counsel's performance fell within the wide range of reasonable professional assistance. Id. This presumption may be rebutted with a showing that, but for counsel's deficient performance, a different result would have occurred. Leatherwoodv. State, 473 So.2d 964, 968 (Miss. 1985).
 ¶ 41. This Court is unable to reach the merits of a claim of ineffective assistance of counsel on direct appeal unless "(a) . . . the record affirmatively shows ineffectiveness of constitutional dimensions, or (b) the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc. are not needed." Read v. State, 430 So.2d 832, 841 (Miss. 1983). If these conditions are unmet, we cannot reach the merits of the issue of ineffective assistance of counsel; if we otherwise affirm the conviction, we should do so without prejudice to the defendant's right to raise the issue in post-conviction proceedings. Id. Our review of this issue on direct appeal is limited strictly to the trial record. Id.
 ¶ 42. The parties have not stipulated that the record is adequate to enable this Court's review of ineffective assistance of counsel. Therefore, we proceed to determine if the appellate record affirmatively shows ineffectiveness of constitutional dimensions. If this Court determines that the record affirmatively shows constitutional ineffectiveness, "then it should have been apparent to the presiding judge, who had a duty . . . to declare a mistrial or order a new trial sua sponte."Colenburg v. State, 735 So.2d 1099, 1102 (¶ 8) (Miss.Ct.App. 1999).
 ¶ 43. The record does not affirmatively show prejudicial incompetence by Young's trial attorney such that the court should have declared a mistrial. Young claims her counsel was deficient in failing to object several times during the trial. Young argues her attorney should have objected to the introduction of the criminal files on Young and Roberson and to testimony concerning the recovery of two other guns from Young's bedroom. Young also argues that her attorney should have objected to inflammatory closing argument referring to Young and Roberson as a "crime family." Failure to object to the introduction of evidence may be considered part of an attorney's trial strategy. McCollins v.State, 798 So.2d 624, 627 (¶ 11) (Miss.Ct.App. 2001). Young has not alleged that, had her counsel made the objections she identifies on appeal, the result at trial would have been different. The record does not affirmatively show that Young's counsel was constitutionally ineffective and, therefore, we dismiss Young's claim of ineffective assistance of counsel without prejudice to her ability to raise the issue in post-conviction proceedings.
 ¶ 44. We recognize Young's argument that her trial counsel was ineffective for failing to seek a jury instruction concerning the proof of Young's intent to possess stolen property. Since this Court is vacating Young's conviction of possession of stolen property, we need not address this issue.
 ¶ 45. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTYOF CONVICTION OF COUNT I, ACCESSORY-AFTER-THE-FACT *Page 833 OF THE CRIME OF POSSESSION OF MARIJUANA WITH INTENT TODISTRIBUTE AND SENTENCE OF FIVE YEARS WITH TWO YEARS SUSPENDED,THREE YEARS TO SERVE, AND THREE YEARS OF POST-RELEASESUPERVISION, AND FINE OF $1,000; COUNT II, POSSESSION OF AFIREARM BY A CONVICTED FELON AND SENTENCE OF THREE YEARS, ALL INTHE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHSENTENCES IN COUNTS I AND II TO RUN CONCURRENTLY IS AFFIRMED. THEJUDGMENT OF CONVICTION OF COUNT III, POSSESSION OF STOLENPROPERTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL AREASSESSED TO LAUDERDALE COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING J., CONCURS IN RESULT ONLY.
[1] As there was no error assigned on appeal, we do not address the issue of whether Deputy Calhoun's testimony contained inadmissible hearsay.