# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00652-COA

ASHTON MYOTA THOMPSON                                 APPELLANT

v.

STATE OF MISSISSIPPI                                      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/07/2018 |
| TRIAL JUDGE: | HON. CHRISTOPHER A. COLLINS |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/31/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

LAWRENCE, J., FOR THE COURT:

¶1. On September 7, 2018, Ashton Myota Thompson ("Thompson") was found guilty of accessory after the fact to murder in violation of Mississippi Code Annotated Section 97-1-5 (Rev. 2014). Thompson was sentenced to twenty years in the custody of the Mississippi Department of Corrections, with two years suspended and eighteen years to serve, followed by two years of reporting probation after release. Thompson filed a "Motion for New Trial," which was denied. Thompson appealed, arguing that there was insufficient evidence to sustain the jury's guilty verdict and that the guilty verdict was against the overwhelming weight of the evidence. Finding no error, we affirm.

## FACTS

¶2. A rivalry between two gangs in Newton, Mississippi, led to the shooting and death of Jamarcus Townsend on March 17, 2017. Richard Lofton, Jordan Myers, Robbie Chapman, Devon Thompson, Robert Bender, and Darron Thomas were affiliated with the "Black Disciples" gang. Thompson was related to several of the gang members as follows—her brother was Devon, her husband was Thomas, and her father was Bender. Witnesses testified that Thompson's brother, husband, and father were all members of the Black Disciples. Townsend and two individuals named Derrick Glass and Josh Walker were affiliated with the "Vice Lords" gang.

¶3. At Thompson's trial, the State called Lofton as a witness. Lofton testified that Thomas and Bender had high rankings in the Black Disciples and often gave orders. Lofton explained that there had been several recent shootings where Townsend, the victim, had targeted various members of the Black Disciples, including Thomas and Bender. A Black Disciples meeting was held, and it was determined that Townsend had "to go." On March 17, 2017, around 11 p.m., Lofton, Myers, and Chapman decided to go looking for Townsend. The three men got into Lyndale Jones's black SUV and headed to Glass's home on Tillman Street in Decatur, Mississippi, to find Townsend. According to Lofton, there were four guns in the car—Jones had a sawed-off 12-gauge shotgun and a ".22 revolver," Lofton had a .22 caliber rifle, and Thomas had given Myers a 9 mm gun. Jones passed off the 12-gauge shotgun to Chapman before they made it to Tillman Street. Lofton testified they drove past

the house where Townsend was, and, as they were turning around, someone started shooting at them from the house. Lofton, Champman, and Jones all returned fire before driving away.

¶4. Lofton testified that they did not know if anyone had been hit at the house. The men went straight to Thompson's house to regroup because that was the plan and "that's where everybody was." They soon found out from social media that Townsend had been killed. During this time, Thompson was in the house, and, according to Lofton, they told her what they had done. Thomas told them to go to Meridian, Mississippi, to get away from the police and the Vice Lords. Thompson also told the men that they had to get away from her house. So Thompson and her friend (and co-indictee) Jessica Powers drove Lofton, Myers, and Chapman to Meridian. Powers testified that Thompson told her "the boys in the truck" had "killed somebody." During the drive, Thompson's mother called her and said that her brother Devon had been picked up by the Newton Police Department for the murder. Thompson told them that they needed to get out of the car because she did not want her brother to take the fall for something they did. Thomas instructed Thompson to take them to a house on 7th Street called "The Field," where Black Disciples members met. Lofton and Myers stayed at that location for twelve days until they were arrested by U.S. Marshals. Chapman left after three or four days and was later arrested.

¶5. At trial, Investigator Bruce McCraw testified that Thompson did not assist in locating Lofton, Myers, or Chapman. Eventually, Lofton, Chapman, Myers, and Jones were charged with first-degree murder. Myers and Lofton pled guilty to conspiracy to commit murder,

3

Powers pled guilty as an accessory after the fact to Townsend's murder, and the cases against Chapman and Jones were pending at the conclusion of Thompson's trial.

## ANALYSIS

### 1. There was sufficient evidence to support Thompson's conviction.

¶6. At trial, Thompson moved for a directed verdict at the close of the State's case and requested a peremptory jury instruction, which were both denied. In her post-trial motion, she argued that the trial court erred in denying both requests. On appeal, Thompson argues that the court erred in denying her motion for a directed verdict. We apply a de novo standard of review to challenges to the sufficiency of the evidence. *Sanford v. State*, 247 So. 3d 1242, 1244 (¶10) (Miss. 2018). In doing so, "we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime." *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017). The issue is not "whether we think the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010).

¶7. The indictment in this case, pursuant to Mississippi Code Annotated section 97-1-5, charged Thompson with being an accessory after the fact to the murder of Townsend by assisting Lofton and Myers "to avoid arrest after the commission of a felony, at a time when" Thompson "well knew that" Lofton and Myers "had committed the crime of murder, by transporting" Lofton and Myers "to locations outside of Newton County . . . with the intent

4

to enable" Lofton and Myers "to avoid arrest and prosecution for the murder of" Townsend. "[A]n accessory-after-the-fact has been defined as 'a person assisting one who has completed the commission of a felony to avoid being apprehended, arrested, convicted, etc.'" *Bailey v. State*, 960 So. 2d 583, 590 (Miss. Ct. App. 2007) (quoting *Chase v. State*, 645 So. 2d 829, 851 (Miss. 1994)). The elements of the crime of accessory after the fact are: (1) "a completed felony has been committed; (2) . . . the accused concealed, received, relieved, aided or assisted a felon, knowing that such person had committed a felony; and (3) . . . such aid or assistance was rendered with intent to enable such felon to escape or avoid arrest, trial, conviction or punishment after the commission of such felony." *Harris v. State*, 290 So. 2d 924, 925 (Miss. 1974).

¶8. Here, the State presented the jury with Lofton's testimony describing the conflict on Tillman Street and Thompson's knowledge of Townsend's death, Powers's testimony concerning Thompson's knowledge and aid given to the men involved, and Investigator McCraw's testimony concerning Thompson's lack of assistance to the investigation— namely, how it took twelve days for law enforcement to locate and arrest the individuals involved at the place where Thompson helped hide them.

¶9. During Lofton's direct examination, the State asked the following:

Q: Mr. Lofton, you're currently in a jail uniform, prison uniform; is that right?

A: Yes, sir.

Q: What's the reason that you're in jail?

5

A: I'm in jail for murder.

Q: Okay. Now, did that arise out of the same incident as the case we're here on today?

A: Yes, sir.

In addition, the jury heard Lofton describe the conflict between the Black Disciples and the Vice Lords, the stay at Thompson's trailer, and the trip to the Meridian safe house. Specifically, Lofton testified that Thompson was at her house when they returned and that the men told her they had shot someone on Tillman Street. The jury also heard Powers's testimony that distinctly described Thompson's knowledge that Lofton, Myers, and Chapman had "killed somebody." Further, Powers detailed the trip to the Meridian safe house. Powers also corroborated Lofton's testimony that Thompson's husband, Darron, was who told Thompson where to take the men in Meridian after the shooting. Investigator McCraw told the jury that Thompson gave no aid to the police throughout the entirety of their investigation. Finally, her actions did aid or assist those involved to avoid arrest because those individuals were arrested by U.S. Marshals many days after the killing.

¶10. Reviewing the evidence in the light most favorable to the State, rational jurors could have found that the State proved each element to convict Thompson. Accordingly, the evidence was sufficient to support Thompson's conviction, and the trial court did not commit error in denying Thompson's motion for a directed verdict and peremptory jury instruction.

**2.    The verdict was not against the overwhelming weight of the evidence.**

6

¶11.    Thompson also asserts that the verdict was against the overwhelming weight of the evidence.  A ruling on a motion for a new trial challenging the weight of the evidence has a different standard of review than a challenge to the legal sufficiency of the evidence. *Daniels v. State*, 107 So. 3d 961, 963 (¶12) (Miss. 2013).  We will reverse the trial court's denial of a motion for a new trial only if the trial court abused its discretion by doing so. *Id*. Our role as an appellate court is to "view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017).  "We do not reweigh evidence. We do not assess the witnesses' credibility.  And we do not resolve conflicts between evidence.  Those decisions belong solely to the jury." *Id*.

¶12.    The jury here had ample evidence to consider.  The jury heard testimony from Lofton, who admitted being involved in the incident that killed Townsend.  Thompson knew the men had killed someone and then transported them to safety afterward to avoid arrest.  Further, Powers confirmed the essential details recited by Lofton in overhearing a telephone call by Thompson about the killing and law enforcement investigating Townsend's death.  Yet, Thompson kept driving the individuals involved and placed them in another city at a gang safe house to assist them in avoiding arrest.  The jury judged each witness's credibility and ultimately determined that Thompson was guilty of accessory after the fact to the murder of Townsend.  Viewed in the light most favorable to the verdict, we cannot find that it was

7

contrary to the overwhelming weight of the evidence or that allowing it to stand would sanction an unconscionable justice. Therefore, the judgment is affirmed.

¶13. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, TINDELL AND C. WILSON, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, J.; McDONALD, J., JOINS IN PART.**

**McCARTY, J., DISSENTING:**

¶14. Because the State failed to prove the defendant knew that a completed felony was committed or that she was aiding a felon, I respectfully dissent.

¶15. There are two critical requirements that must be met when proving an accessory-after-the-fact case. First, the State must prove that there was a "completed felony . . . committed." *Young v. State*, 908 So. 2d 819, 826-27 (¶17) (Miss. Ct. App. 2005). Second, the State must prove that the defendant *knew* "that the person had committed a felony." *Id*.

¶16. First off, the State failed to prove a completed felony had been committed. The proof at trial was that Thompson was told Lofton "shot someone on Tillman Street." However, as the majority notes, Lofton told the jury at trial that someone started shooting at them first, while they were driving down the street and turning around. It was only at that point that gunfire was returned.

¶17. While this may have been a killing under Mississippi law, it sounds incredibly close to the definition of justifiable homicide. *See* Miss. Code Ann. § 97-3-15(1)(e) (Rev. 2014)

8

(defining the killing of a person as justifiable "[w]hen committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony upon him . . . in any occupied vehicle . . . "). This was not proof of a completed felony, but the opposite.

¶18. The majority quotes Lofton as saying, "I'm in jail for murder." Although he made that statement at trial, it is both factually and legally inaccurate. Lofton later clarified he plead guilty to "conspiracy to commit murder." This further hurts the State's case since "[c]onspiracy is a complete offense in itself, distinct from the commission of the crime contemplated by the conspiracy," and "[t]he offense is complete without showing an overt act in furtherance of the conspiracy." *Davis v. State*, 485 So. 2d 1055, 1057-58 (Miss. 1986). Lofton's guilty plea for conspiracy to commit murder neither proves that a murder was committed nor satisfies the missing element from the State's proof. The State's failure to prove these elements requires reversal.

¶19. Reversal is also required because the State failed to prove mens rea. The Supreme Court has held in cases of this type that "[a]n indispensable element of the crime charged . . . is that [the defendant] acted with guilty knowledge." *Matula v. State*, 220 So. 2d 833, 834 (Miss. 1969). Quoting a treatise on criminal law, the Supreme Court opined, "Ordinarily one is not guilty of a crime unless he is aware of the existence of all those facts which make his conduct criminal. Without guilty knowledge criminal intent cannot exist." *Id*. Ultimately, "[t]o render one liable as an accessory after the fact he must have had *actual knowledge*, at the time he relieved or assisted the principal, that the latter had committed a felony; . . . such

9

knowledge *must be personal as distinguished from constructive*." *Id.* (emphasis added).

¶20. In contrast to this settled law, the State's meager proof was a hodgepodge of constructive theories and inferences. The State did not rely on what Thompson's state of mind would have been at the time she helped Lofton, as the State should have. Instead, it relied on the legal realities by time of trial. As set out above, Thompson could have believed she was helping someone that had not committed a felony at all. Powers even testified that the defendant believed her brother was innocent. The State was required to prove her mental state at the time of her actions. But the State failed to prove this at all.

¶21. The majority mentions that two groups of men were associated with the Black Disciples and the Vice Lords. The evidence showed these men shot at each other and that some of them had gone to prison over it. There was no proof the defendant in this case was in either group, and certainly no proof showed she ever pulled a trigger. The State also failed to prove that she knew a felony had been committed and that she had the requisite mental intent to aid somebody who had committed a felony. Under our law, she has committed no crime at all. For those reasons, her conviction must be reversed and rendered.

**WESTBROOKS, J., JOINS THIS OPINION. McDONALD, J., JOINS THIS OPINION IN PART.**

10