[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 503 
¶ 1. Rickey Jones was tried and convicted in the Circuit Court of Tippah County, Mississippi of possession of cocaine with intent to sell. He was sentenced to fifteen years in the custody of the Mississippi Department of Corrections, with five years suspended, ten years to serve and five years' post-release supervision, and was fined $2,000. From his conviction, Jones appeals to this Court alleging that the trial court erred by (1) refusing to admit into evidence the transcript of James Cheairs's guilty plea hearing, and (2) by refusing two of his proffered jury instructions. Finding no error, we affirm.
 SUMMARY OF FACTS AND PROCEDURAL HISTORY ¶ 2. On the morning of June 22, 2001, the Tippah County Sheriff's Department received information from a confidential informant that Rickey Jones, a suspected drug dealer, would be transporting a large amount of cocaine to the City of Ripley, Mississippi later in the day. After observing Jones's automobile entering the drive-through line at the Ripley Taco Bell that afternoon, deputies from the sheriff's department approached the car and ordered Jones and his nephew, James Cheairs, to exit the car. While patting down Cheairs for weapons, the officers found in his pocket a small bag of marijuana and a bag containing twenty individually wrapped rocks of crack cocaine. The officers found nothing on Jones's person. Jones and Cheairs were subsequently arrested and taken to jail for processing.
 ¶ 3. At the jail, Officer Jeff Medlin of the Mississippi Bureau of Narcotics took statements from both Jones and Cheairs. In his statement, Jones said that he had met with "a guy" in Grand Junction, Tennessee on the morning of June 22, and that he had paid $400 for half an ounce of crack cocaine. He stated that after he purchased the drugs, he picked up Cheairs and "took the back road" to Ripley. Jones said that upon entering Ripley and noticing the large police presence, he handed the crack cocaine to Cheairs, who then pocketed it. Cheairs's statement, however, directly contradicted Jones's version of the story. In his statement, Cheairs said that he had been riding around in Falkner, Mississippi on the morning of June 22, and that he "ran into a white boy" who gave him some cocaine to sell. He stated that he then met Jones and traveled to Ripley with him. In his statement, Cheairs never claimed that Jones handed him the cocaine upon noticing the police.
 ¶ 4. Both Jones and Cheairs were indicted on a charge of possession of cocaine with intent to sell, in violation of section 41-29-139(a)(1) of the Mississippi Code. Cheairs pled guilty to the charge and was sentenced to five years' probation. Jones, however, proceeded to a jury trial. His defense was that he had lied in his statement in order to protect Cheairs, and that he had never possessed the cocaine himself. The fact that Cheairs had pled guilty to the charge was the keystone of Jones's defense. At trial he introduced into evidence Cheairs's statement that he had picked up the cocaine in order to sell it, and introduced Cheairs's petition to enter a guilty plea, along with the order sentencing him to five years of probation. Jones also attempted to enter into evidence the *Page 504 
transcript of Cheairs's plea hearing, but the trial judge disallowed it as inadmissible hearsay. In addition, prior to deliberations, Jones submitted two jury instructions which were refused by the court. At the end of the trial, Jones was convicted and sentenced to a term of fifteen years in the custody of the Mississippi Department of Corrections, with five years suspended, ten years to serve and five years of post-release supervision. In addition, he was fined $2,000.
 ¶ 5. Aggrieved, Jones filed a timely appeal to this Court. He claims that the trial court erred by (1) refusing to admit into evidence the transcript of Cheairs's guilty plea hearing, and (2) by refusing two of his proffered jury instructions. Finding no error, we affirm.
 ISSUES AND ANALYSIS I. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ADMIT INTO EVIDENCE THE TRANSCRIPT OF CHEAIRS'S GUILTY PLEA HEARING.
 STANDARD OF REVIEW ¶ 6. The standard of review for the admission of or refusal to admit evidence is well-settled: admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion. Church of GodPentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.,716 So.2d 200, 210 (¶ 36) (Miss. 1998). "Abuse of discretion is found when the reviewing court has a `definite and firm conviction' that the court below committed a clear error of judgment and conclusion it reached upon a weighing of the relevant factors." Withers v. State, 907 So.2d 342, 345 (¶ 7) (Miss. 2005) (quoting Caracci v. Int'l Paper Co.,699 So.2d 546, 556 (¶ 16) (Miss. 1997)). Further, in the event of an erroneous ruling, the error must have affected a substantial right of a party in order to merit reversal. M.R.E. 103(a); seealso Young v. State, 908 So.2d 819, 826 (¶ 15) (Miss.Ct.App. 2005).
 ANALYSIS ¶ 7. Jones claims that the trial court abused its discretion in failing to admit into evidence the transcript of James Cheairs's guilty plea hearing. He states that "it is clear that the transcript meets no less than four exceptions" to the rules prohibiting the introduction of hearsay evidence. Specifically, Jones argues that the transcript met the requirements of Rules 803(6) (records of regularly conducted activity), 803(8) (public records and reports), 803(22) (judgment of previous conviction) and 804(b)(1) (former testimony — declarant unavailable) of the Mississippi Rules of Evidence. However, while Jones's counsel expresses certainty that the transcript fits the first three exceptions, he offers no case law whatsoever in support of that proposition; our independent research has uncovered no case law that permits such documents into evidence under the exceptions enumerated in M.R.E. 803.
 ¶ 8. Jones's most compelling argument in support of admission of the plea transcript is based on M.R.E. 804(b)(1), which states that the following is not excluded by the hearsay rule if the declarant is unavailable as a witness:
 Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the *Page 505 
testimony by direct, cross, or redirect examination.
 ¶ 9. In order to take advantage of this exception, however, the declarant must meet the definition of unavailability as given in M.R.E. 804(a). Relevant to Jones's case is M.R.E. 804(a)(5), which states that "`Unavailability as a witness' includes situations in which the declarant: Is absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means[.]" In the present case, the circuit judge determined that Jones had not exercised due diligence in obtaining Cheairs's presence at trial, and specifically noted that Jones did not request a subpoena compelling Cheairs's attendance until late afternoon on the first day of trial. Taking this into consideration, the court stated that it was "of the opinion that the efforts to obtain the witness, James Cheairs, comes too late," and that allowing the transcript into evidence would violate the rules prohibiting the introduction of hearsay evidence.
 ¶ 10. Considering Jones's lack of effort to secure Cheairs's attendance, we cannot find that the trial court abused its discretion in finding that Cheairs was not "unavailable" under M.R.E. 804(a)(5). Accordingly, the trial court was not in error in finding that Cheairs's plea transcript failed to meet the requirements of the prior testimony hearsay exception, M.R.E. 804(b)(1).
 ¶ 11. Assuming for the moment, arguendo, that the trial court erred in excluding the transcript of Cheairs's plea hearing, Jones has not shown any prejudice resulting from the error. Jones's defense strategy was to show that he had only admitted to the crime in order to protect his nephew from imprisonment. In support, Jones introduced into evidence Cheairs's statement to the police wherein he admitted to procuring the cocaine in order to sell it. Furthermore, the trial court allowed Jones to introduce Cheairs's petition to enter a guilty plea and the order sentencing him to five years of probation. Jones points to no information contained in Cheairs's plea transcript that was not contained in the other evidence before the jury. Accordingly, he cannot show any prejudice arising from the transcript's exclusion.
 ¶ 12. Additionally, Rule 403 of the Mississippi Rules of Evidence expressly allows a trial court to exclude evidence which it determines to be cumulative in nature. See Montgomery v.State, 891 So.2d 179, 185 (¶ 41) (Miss. 2004) (holding that the trial court did not abuse its discretion by excluding cumulative testimonial evidence). As the information contained in the transcript of Cheairs's plea hearing was cumulative in nature, the trial court was well within its discretion in excluding it. Jones's assignment of error is without merit.
 II. WHETHER THE TRIAL COURT ERRED IN REFUSING DEFENSE INSTRUCTIONS D-2 AND D-4.
 STANDARD OF REVIEW ¶ 13. Trial judges enjoy considerable discretion regarding the form and substance of jury instructions. Armstrong v. State,828 So.2d 239, 244 (¶ 15) (Miss.Ct.App. 2002) (citing Rester v.Lott, 566 So.2d 1266, 1269 (Miss. 1990)). However, when objections to given or refused jury instructions are raised, this Court employs the following standard of review:
 Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is *Page 506 
limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
Harris v. State, 861 So.2d 1003, 1012-13 (¶ 18) (Miss. 2003). When so read, if the instructions fairly announce the law and create no injustice, we will not find reversible error. Johnsonv. State, 823 So.2d 582, 584 (¶ 4) (Miss.Ct.App. 2002).
 ANALYSIS ¶ 14. Jones first alleges that the trial court improperly refused as unduly confusing his proffered instruction D-2. The instruction read as follows:
 You have heard evidence that James Cheairs made a statement prior to trial that may be inconsistent with the witness' testimony at this trial. If you believe that an inconsistent statement was made, you may consider the inconsistency in evaluating the believability of the witness' testimony.
 ¶ 15. The trial court understandably refused the instruction as confusing. First of all, it is unclear just who the "witness" referred to in the instruction actually is. If "the witness' testimony" meant the testimony of James Cheairs, the proposed instruction would be improper because Cheairs never testified at trial. However, if "the witness' testimony" actually meant "thewitnesses' testimony," then the instruction would have been properly excluded as redundant. As stated above, a trial judge does not abuse his discretion in refusing an instruction that is covered fairly elsewhere in the instructions. The court's refusal of instruction D-2 would have constituted error had no other instructions regarding the believability and credibility of witnesses been provided to the jury. Swann v. State,806 So.2d 1111, 1117 (¶ 23) (Miss. 2002). However, the jurors were presented with instructions informing them of their duty to determine the weight and credibility of the evidence. For example, instruction D-7, given by the court, read in pertinent part:
 Each person testifying under oath is a witness. You have the duty to determine the believability of the witnesses. . . . In weighing a discrepancy by a witness or between witnesses, you should consider whether it resulted from an innocent mistake or a deliberate falsehood, and whether it pertains to a matter of importance or an unimportant detail. You may reject or accept all or any part of a witness' testimony and you may reject part and accept other parts of a witness's testimony. After making your own judgment, you will give the testimony of each witness the credibility, if any, as you may think it deserves. . . .
 ¶ 16. Furthermore, instruction C-1 given by the court admonished the jury that:
 You are the sole judges of the facts in this case. Your exclusive domain is to determine what weight and credibility will be assigned the testimony and supporting evidence of each witness in this case. You are required and expected to use good common sense and sound honest judgment in considering and weighing the testimony of each witness who has testified before you.
 ¶ 17. We find that the contents of Jones's proposed instruction D-2 were covered fairly in instructions D-7 and C-1, both given by the court. Accordingly, we find that the trial court did not abuse its discretion in refusing instruction D-2. Jones's claim of error is without merit.
 ¶ 18. Jones also claims that the trial court erred in refusing his offered instruction D-4. It read:
 The Court instructs the jury that a reasonable doubt may arise from the whole *Page 507 
of the evidence, the conflict of the evidence, the lack of evidence, or the insufficiency of the evidence; but however it arises, if it arises, it is your sworn duty to find the Defendant "Not Guilty."
 ¶ 19. The trial court refused the instruction as an impermissible attempt to define reasonable doubt. Jones claims that the court erred in refusing the instruction, and that the lower court's refusal of instruction D-4 deprived him of a theory of his defense. However, the proposed instruction does not attempt to state any theory of the case; it merely attempts to define reasonable doubt. The Mississippi Supreme Court has long condemned this type of instruction, stating that "[r]easonable doubt defines itself; it therefore needs no definition by the court." Barnes v. State, 532 So.2d 1231, 1235 (Miss. 1988) (quoting Boutwell v. State, 165 Miss. 16, 30, 143 So. 479, 483
(Miss. 1932)). Instruction S-1, given by the court, informed the jurors that before they returned a guilty verdict, they had to find beyond a reasonable doubt that Jones was guilty. Further, instruction D-6, also given by the court, imposed on the jury a duty to acquit in the absence of proof of guilt beyond a reasonable doubt. The proposed instruction was superfluous, and accordingly, we find that the trial court did not abuse its discretion in refusing Jones's proposed instruction D-4. Jones's assignment of error is without merit.
 ¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF TIPPAH COUNTY OFCONVICTION OF POSSESSION OF COCAINE WITH INTENT TO SELL ANDSENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPIDEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED, TEN YEARSTO SERVE, FIVE YEARS' POST-RELEASE SUPERVISION, AND FINE OF$2,000, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TOTIPPAH COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR. *Page 725