[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 199 
¶ 1. Timothy Carr was indicted for capital murder in the Jones County Circuit Court, with the underlying felony being robbery, but was convicted of the lesser offense of manslaughter. He was sentenced to serve a term of twenty years. He appeals, asserting five suggestions of error:
 (1) The trial court erred in denying his motion to dismiss for speedy trial violations.
 (2) The trial court erred in denying his motion to suppress the introduction of the fire extinguisher used to kill the victim.
 (3) The trial court erred in denying his motion to suppress his videotaped statement.
 (4) The trial court erred in defining reasonable doubt for the jury.
 (5) The trial court erred in failing to grant his motion for a directed verdict and in denying his motion for a JNOV.
Finding no error, we affirm.
 STATEMENT OF FACTS ¶ 2. The victim, Arthur Winston, bought biscuits at a McDonald's, where he was observed to be carrying "a roll" of currency. He then drove to a V.F.W. post. Timothy *Page 200 
Carr was driven to the V.F.W. post by a friend, who observed a parked car which matched the description of the car that Winston was known to drive. Carr was wearing a jacket and pants with camouflage print on them.
 ¶ 3. Later that day, two people entered the V.F.W. post, and found Winston lying on the floor with wounds to his head. A fire extinguisher with Winston's blood on it was recovered from some bushes near the V.F.W. post. Testimony by a pathologist established that the fire extinguisher could have been used to cause the cerebral trauma which was the cause of death. Articles of camouflage clothing, with Winston's blood on them, were recovered from a dumpster at the apartment complex where Carr resided.
 ¶ 4. Carr gave a videotaped statement, in which he said he had been at the V.F.W., and Winston had made a homosexual overture. Carr said he pushed Winston against a wall, and the force of the impact knocked loose a fire extinguisher, which fell upon Winston's head. Carr said Winston was breathing when he left the V.F.W. post, and identified other persons whom he suspected of being the true killers. Carr did not testify at trial.
 DISCUSSION (1) THE TRIAL COURT ERRED IN DENYING CARR'S MOTION TO DISMISS OR SPEEDY TRIAL VIOLATIONS
 STANDARD OF REVIEW ¶ 5. Review of a speedy trial claim involves a question of fact: whether the trial delay arose from good cause.Flora v. State, 925 So.2d 797, 814 (¶ 58) (Miss. 2006) (citing DeLoach v. State, 722 So.2d 512,516 (¶ 12) (Miss. 1998)). We will uphold the trial court's finding of good cause if that decision is supported by substantial, credible evidence. Id. (citing Folkv. State, 576 So.2d 1243, 1247 (Miss. 1991)). However, if no probative evidence supports the trial court's findings, we must reverse the decision and dismiss the charge. Ross v.State, 605 So.2d 17, 21 (Miss. 1992) (citing Strunk v.United States, 412 U.S. 434, 440, 93 S.Ct. 2260,37 L.Ed.2d 56 (1973)). The State bears the burden of proving good cause for the speedy trial delay, and thus bears the risk of non-persuasion. Flores v. State, 574 So.2d 1314, 1318
(Miss. 1990); Nations v. State, 481 So.2d 760, 761
(Miss. 1985). Good cause is a factual finding which is not different from any other finding of fact, and thus an appellate court should not disturb the finding when it is based upon substantial evidence identified from the record. McGhee v.State, 657 So.2d 799, 803 (Miss. 1995).
 ¶ 6. In Carr's brief, he raises only the issue of the constitutional right to a speedy trial, and makes no argument going to the statutory right provided by Mississippi Code Annotated section 99-17-1 (Rev. 2000). The Sixth Amendment to the United States Constitution establishes a right to a "speedy and public trial." See United States Const. amend. VI. The Supreme Court has observed that "the right to a speedy trial is as fundamental as any of the rights secured by theSixth Amendment. That right has its roots at the very foundation of our English law heritage." Klopfer v. NorthCarolina, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1
(1967). The federal constitutional right is applied to the states through the Fourteenth Amendment. Id.
at 222-23, 87 S.Ct. 988. Additionally, Article 3, section 26 of the Mississippi Constitution of 1890 guarantees a criminal defendant "a speedy and public trial." This right, as with the federal constitutional right, attaches when a person has been accused, either by way of *Page 201 
arrest, indictment or information. Stark v. State,911 So.2d 447, 450 (¶ 6) (Miss. 2005).
 ¶ 7. In Barker v. Wingo, 407 U.S. 514, 529-34,92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) the Supreme Court announced a four-part balancing test for determining whether a defendant's right to speedy trial has been violated. The four factors are (1) length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant. Id. at 530,92 S.Ct. 2182. The Mississippi Supreme Court has adopted theBarker analysis as applicable to the state constitutional speedy trial right; accordingly, we will consider the constitutional claims together. See Skaggs v.State, 676 So.2d 897, 900 (Miss. 1996). For the purpose of the analysis, the conduct of both parties is weighed, and no one factor is outcome determinative. Fleming v. State,604 So.2d 280, 299 (Miss. 1992). The weight which a court gives to each factor depends on the facts of the particular case.Id. This Court has consistently applied the four-part Barker test in cases involving constitutional speedy trial analysis. Price v. State, 898 So.2d 641,648 (¶ 10) (Miss. 2005).
 ¶ 8. This first factor has been called a triggering mechanism because until there is some delay which is presumptively prejudicial, there is no need for an inquiry into the other balancing test factors. Barker,407 U.S. at 531-32, 92 S.Ct. 2182. Thus there must first be a finding of a "presumptively prejudicial" delay or our inquiry on the issue ends. Id. This analysis is largely a function of mathematics and calendar, with the triggering date in the instant case being the date of the defendant's arrest. An eight-month delay between arrest and trial has been found to be presumptively prejudicial. Smith v. State,550 So.2d 406, 408 (Miss. 1989). In this case, approximately twenty-eight months elapsed between Carr's arrest and trial. Therefore, a presumption of prejudice exists.
 ¶ 9. The second Barker factor is whether the delay is justified. "Once there is a finding that the delay is presumptively prejudicial, the burden shifts to the prosecution to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons." DeLoachv. State, 722 So.2d 512, 517 (¶ 17) (Miss. 1998). Thus, we must determine the reason for the delay and examine the unique circumstances of each case. Stark v. State,911 So.2d 447, 450 (¶ 11) (Miss. 2005). The Barker
court said that on this factor different weights should be given to different reasons for delay. Barker,407 U.S. at 531, 92 S.Ct. 2182. A deliberate attempt by the State to delay the trial in order to hamper the defense should be weighted heavily against the State. Id. However, the Supreme Court said that a more neutral reason for the delay such as negligence or overcrowded dockets should be weighed less heavily but should, nevertheless, be considered because "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."Id. In this case, while some of the delay appears attributable to the State due to a delay in scientific testing, Carr did go through several changes of counsel, until finally one of the defense attorneys was elected as the district attorney, which necessitated securing special prosecutors from the Attorney General's Office. Therefore, we find this factor weighs equally.
 ¶ 10. The accused's assertion of or failure to assert the right to a speedy trial is the third of the Barker
factors to be considered in an inquiry on whether the speedy trial right was denied. Although a defendant does not have an obligation to bring himself to trial, he will earn "points *Page 202 
. . . on his side of the ledger" when he has made a demand for a speedy trial. Stevens v. State, 808 So.2d 908,917 (¶ 22) (Miss. 2002). In this case, Carr filed a motion to dismiss the charges against him several weeks prior to the actual trial. In Perry v. State, 637 So.2d 871, 875
(Miss. 1994), the Mississippi Supreme Court held that a motion for dismissal for violation of the speedy trial right is not the equivalent of a demand for a speedy trial. In this case, Carr did not assert his right. Therefore, this factor weighs in favor of the State.
 ¶ 11. The fourth Barker factor is prejudice to the defendant. The Barker court instructed that prejudice to the defendant should be assessed in light of the following interests: (1) to prevent oppressive pre-trial incarceration, (2) to minimize anxiety and concern by the accused due to an unresolved criminal charge, and (3) to limit the possibility that the defense will be impaired. UnitedStates v. Loud Hawk, 474 U.S. 302, 312, 106 S.Ct. 648,88 L.Ed.2d 640 (1986) (quoting United States v. Ewell,383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966)). The court said prejudice should be examined in light of these interests of a defendant with the last interest, possible prejudice to the defendant, being the most important. Barker,407 U.S. at 532, 92 S.Ct. 2182. In this case, while there was a lengthy pre-trial incarceration, there is no assertion, or even suggestion, that the delay caused actual prejudice to Carr's defense. Therefore, taking the four factors into consideration, we do not find a denial of the constitutional right to a speedy trial, and this issue is without merit.
 (2) THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS THE INTRODUCTION OF THE FIRE EXTINGUISHER
 ¶ 12. "The standard of review for the admission of or refusal to admit evidence is well-settled: admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion." Jones v. State, 912 So.2d 501, 504 (¶ 6) (Miss.Ct.App. 2005) (citing Church of God Pentecostal,Inc. v. Freewill Pentecostal Church of God, Inc.,716 So.2d 200, 210 (¶ 36) (Miss. 1998)). In this case, Carr moved to suppress the introduction of the fire extinguisher because he contended that the chain of custody had been broken, due to an evidence tag inexplicably having come apart from the fire extinguisher. However, the testimony of the investigating officer was that the fire extinguisher was the same one that he had collected and put into the possession of the evidence custodian. There were no fingerprints found on the fire extinguisher because it had been secreted in a patch of weeds and exposed to rain. There was never any suggestion that the fire extinguisher had been tampered with in any way to change its weight or size or any other aspect affecting its potential to be used to kill Winston. Therefore, we cannot say the trial judge abused his discretion in allowing its introduction. This issue is without merit.
 (3) THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS CARR'S VIDEOTAPED STATEMENT
 ¶ 13. Again, the standard of review to admit or refuse the introduction of evidence is abuse of discretion.Jones, 912 So.2d at 506 (¶ 6). In this case, the videotape was edited, at Carr's request, to exclude mention of his prior convictions of robbery. There can be no showing of abuse of discretion. This issue is without merit. *Page 203 
 (4) THE TRIAL COURT ERRED IN DEFINING REASONABLE DOUBT FOR THE JURY
 ¶ 14. The Mississippi Supreme Court has long condemned any definition for the jury as to reasonable doubt, stating that "reasonable doubt defines itself; it therefore needs no definition by the court." Barnes v. State,532 So.2d 1231, 1235 (Miss. 1988) (quoting Boutwell v. State, 165 Miss. 16, 30, 143 So. 479, 483 (1932)).
 ¶ 15. In this case, after the jury had retired to deliberate, it sent a note to the trial judge asking to have reasonable doubt re-explained to them in written form. The trial judge called the jury back into the courtroom, and stated the following, without any objection from Carr:
 Reasonable doubt is what you as a person based on what your experiences in life and what you have been able to observe from things that you know or have learned through life that cause you to have a reasonable doubt about anything. I can't tell you what reasonable doubt might mean to you or anyone else. It's whatever you fell like that whatever is being presented, if you have any doubt about that being reasonable, then you've got a doubt about it.
 But we're not even allowed under the law to go into what reasonable doubt is. I may have even gone too far today to try and explain to you what reasonable doubt is. It's what you think reasonable doubt is And that's all I can tell you.
 ¶ 16. Even if we were to assume that the trial judge invaded the province of the jury with the above quoted comment, which we do not, the issue is procedurally barred due to Carr's failure to contemporaneously object. See, e.g., Walker v.State, 671 So.2d 581, 587 (Miss. 1995); Williams v.State, 863 So.2d 63, 66 (¶ 4) (Miss.Ct.App. 2003). Therefore, we find this issue barred from appellate review.
 (5) THE TRIAL COURT ERRED IN FAILING TO GRANT CARR'S MOTIONS FOR A DIRECTED VERDICT AND FOR A JNOV
 ¶ 17. A directed verdict and a motion for JNOV challenge the sufficiency of the evidence presented to the jury.McClain v. State, 625 So.2d 774, 778 (Miss. 1993). The standard of review is the same: this Court is required "to reverse and render where the facts point overwhelmingly in favor of the appellant that reasonable men could not have found appellant guilty." McClendon v. State, 852 So.2d 43,46-47 (¶ 11) (Miss.Ct.App. 2002) (citing Baker v.State, 802 So.2d 77, 81 (¶ 13) (Miss. 1995)). Alternatively, this Court is required to affirm the trial court's denial "where substantial evidence of such quality and weight exists to support the verdict and where reasonable and fair minded jurors may have found appellant guilty."Id. at 47. The standard of review requires this Court to consider the evidence in the light most favorable to the State, giving the State "the benefit of all favorable inferences that may be reasonably drawn from the evidence."Id. All credible evidence supporting the defendant's guilt should be accepted as true. McClain,625 So.2d at 778.
 ¶ 18. In the present case, evidence established that Carr was at the scene of the crime, and clothing similar to that which he was wearing at the scene of the crime was later found in a dumpster at the apartment complex where Carr lived. The clothing had blood on it which was determined to have been the victim's blood. Further, Carr gave a statement admitting to a physical confrontation with the victim, in which he stated the fire extinguisher "fell" on the victim's head, rendering Winston unconscious but still breathing. Dr. Steven Hayne, a forensic pathologist, testified *Page 204 
that Winston was struck upon the head four times with a heavy object, and of these, one blow was fatal in that it damaged the brain stem, and Winston would have been rendered unconscious but still alive for a short period of time. Reviewing this evidence in the light most favorable to the State, we find substantial evidence to support the verdict; accordingly, this issue is without merit.
 ¶ 19. THE JUDGMENT OF THE JONES COUNTY CIRCUITCOURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTYYEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OFCORRECTIONS AS A HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OFTHIS APPEAL ARE ASSESSED TO JONES COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.